UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY GENE BOLLEA, professionally
known as HULK HOGAN,

              Plaintiff,

      v.

HEATHER CLEM; GAWKER MEDIA, LLC
aka GAWKER MEDIA; GAWKER MEDIA
GROUP, INC. aka GAWKER MEDIA;
GAWKER ENTERTAINMENT, LLC;
GAWKER TECHNOLOGY, LLC; GAWKER
SALES, LLC; NICK DENTON; A.J.
DAULERIO; KATE BENNERT;
BLOGWIRE HUNGARY SZELLEMI
ALKOTAST HASZNOSITO KFT, aka
GAWKER MEDIA,

              Defendants.

Case No. 8:13-cv-0001-T-27AEP

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Terry Gene Bollea, professionally known as "Hulk Hogan" ("Bollea" or "Plaintiff"), hereby responds to the Motion of Gawker Media, LLC ("Gawker") to Dismiss Plaintiff's First Amended Complaint ("FAC") for Failure to State a Claim, dated January 4, 2013 (Dkt. 10) ("Motion"), and respectfully requests that the Motion be denied.

{BC00027327:1}

## I.    **INTRODUCTION**

Plaintiff Terry Bollea first requests that the Motion be denied on grounds that the Court lacks jurisdiction of this action because Gawker did not have proper grounds to remove the action from Florida state court to the U.S. District Court.  Mr. Bollea incorporates herein by reference the points and authorities set forth in his pending Motion to Remand filed on January 22, 2013.   Should the Court deny Mr. Bollea's Motion to Remand and retain jurisdiction, Mr. Bollea responds to the substance of the Motion to Dismiss as follows:

The First Amendment does not permit Gawker to trammel Mr. Bollea's rights by posting on its website an unlawfully recorded videotape of him fully naked and having consensual sex in a private bedroom, for all the world to see.  Gawker's argument would eliminate the right to privacy, contrary to the Eleventh Circuit's admonition that "[b]oth the rights to freedom of speech and freedom of the press… and the right to privacy… are fundamental constitutional rights," and that "[t]he Constitution directs no hierarchy between them."  *Toffoloni v. LFP Publ'g Group, LLC*, 572 F.3d 1201, 1207-1208 (11th Cir. 2009).

The Eleventh Circuit requires courts to "engage in a **fact-sensitive balancing** with an eye toward that which is **reasonable** and that which **resonates with our community morals**, in order to protect the Constitution as a whole."  *Id.* (emphasis added).  Here, "our community morals" dictate that an illegal video of a person having sex in a private bedroom should **not** be permitted to be posted on the Internet, not in the name of the First Amendment or otherwise.  While the **fact that** Mr. Bollea had sex with Ms. Clem may be newsworthy, the posting of a one minute forty second "highlight reel" of the private sexual encounter, showing the two partners fully naked and consensually engaged in oral sex and sexual

intercourse, without any of the footage blurred, blocked or obscured in any way, is a violation of privacy and not protected by the First Amendment. Just as a person does not have the First Amendment right to shout "Fire!" in a crowed theater, Gawker does not have the First Amendment right to post footage (whether the entire video or the most graphic scenes from it) depicting private, consensual sexual activity and full nudity in a private bedroom, particularly when Mr. Bollea did not know that he was being filmed and did not consent to the filming or the public dissemination of the footage.

The fact that the video was taken six years ago, or that Mr. Bollea may have mentioned in a book a different sexual encounter with a different person, or that an Internet report may have speculated about the **possible** existence of the instant video in April 2012 (though the actual video footage did not become public until October 2012 – the same month Mr. Bollea filed a lawsuit over it), or that Mr. Bollea allegedly said something about the **possible** video in April 2012 (though Mr. Bollea does not concede that he made any such statements) does not in any way undermine Mr. Bollea's right to privacy in connection with the unauthorized posting of the footage of the private sexual encounter. Rather, Mr. Bollea has always maintained the right to seek the removal of the video from the Internet, and to seek damages against all of the Defendants (including the Gawker Defendants and Heather Clem) for their activities which caused the video footage to become public.

Mr. Bollea's claims for violation of his privacy rights, publicity rights, infliction of emotional distress and violation of Florida Statute section 934.10 should not be dismissed based on Defendants' claimed First Amendment rights. The First Amendment does not trump all other rights. It certainly does not permit a person to secretly videotape another person

(whether a celebrity or not) naked in a private place engaging in private, consensual sexual relations, or to post that video on the Internet -- particularly when, as here, it violates criminal statutes.

The First Amendment protects Gawker's right to **report the news**.  There is, however, a great divide between reporting the news and profiting commercially from a private sex tape under the guise of "journalism."  If Gawker is permitted to get away with this conduct, then the right to privacy ceases to exist in America and any public figure (whether an actor, musician, sports figure, politician, or even a judicial officer) can be secretly taped in any private place, engaging in any private activity (including naked and engaged in sexual activity), and the footage can be posted on the Internet forever, for all the world to watch, in the name of "journalism" and without consequence or remedy.  The law simply does not support such an inequitable result and Gawker invites reversible error by asking the Court to bypass discovery and the required balancing and dismiss the FAC pursuant to a Rule 12(b)(6) motion.  Plaintiff's FAC properly alleges facts supporting each of his causes of action against each of the Defendants, including Gawker.  Therefore, Gawker's Motion should be denied in its entirety.

## II.   <u>STANDARD OF REVIEW</u>

On a motion to dismiss, a court must **accept as true all of the allegations in the complaint and construe them in the light most favorable to the plaintiff**.  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004); *see also Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The standard on a Rule 12(b)(6) motion is not whether the plaintiff ultimately will prevail in his theories, but whether the allegations are sufficient to allow the

plaintiff **to conduct discovery in an attempt to prove the allegations**. *See Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).  All that is required is "a short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).  The plaintiff need only plead "enough facts to state a claim to relief that is **plausible on its face**." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations" (internal citation omitted)).

Throughout its Motion, Gawker references the Court's Order in the previously filed action denying Plaintiff's Motion for Preliminary Injunction, and Gawker treats the Court's findings in connection with that motion as establishing law of the case. *See e.g.*, Motion p. 6. However, the Court's findings regarding Plaintiff's request for a preliminary injunction have no bearing on the present Motion.  It is well established that findings of fact and conclusions of law made by a court in connection with a preliminary injunction proceeding are **not binding adjudications**.[1]  Moreover, to prevail on a motion for preliminary injunction, a plaintiff must establish a substantial likelihood of success on the merits.  By contrast, on a motion to dismiss, the complaint need only allege facts that, if true, support a *prima facie* case, **even if the plaintiff is unlikely to succeed on the merits**. *See Bell Atl. Corp.*, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely'").

---

[1] *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("where a federal district court has granted a preliminary injunction, the parties generally will [not] have had the benefit [] of a full opportunity to present their cases"); *see also Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (findings at preliminary injunction stage are made before discovery was completed and evidence fully developed and, thus, were "not binding on the district court . . .").

III.   **ARGUMENT**

A.   **The First Amendment Does Not Bar Plaintiff's Claims**

1.   **The Court Must Balance the Parties' Rights**

The Eleventh Circuit has held that the First Amendment, and the right to privacy,

stand on **equal footing**:

> **Both** the rights to freedom of speech and freedom of the press, as guaranteed
> by the First Amendment, **and the right to privacy**, as guaranteed by the Due
> Process Clause, **are fundamental constitutional rights**.   The Constitution
> directs no hierarchy between them.   Thus, courts are required to engage in a
> **fact-sensitive balancing,** with an eye toward that which is **reasonable** and
> that which **resonates with our community morals**, in order to protect the
> Constitution as a whole.

*Toffoloni*, 572 F.3d at 1207-08 (emphasis added).   Addressing the tension between the right

of privacy and the First Amendment, the Ninth Circuit has held:

> Does the spirit of the Bill of Rights require that individuals be free to pry into
> the unnewsworthy private affairs of their fellowmen?   In our view it does not.
> In our view **fairly defined areas of privacy must have the protection of law
> if the quality of life is to continue to be reasonably acceptable. The
> public's right to know is, then, subject to reasonable limitations so far as
> concerns the private facts of its individual members**....

*Virgil v. Time, Inc.*, 527 F.2d 1122, 1128 (9th Cir. 1975) (emphasis added).[2]

The First Amendment, therefore, does not automatically trump any competing

interests or rights, as Gawker wrongly claims.   Rather, Gawker's First Amendment rights

---

[2] These holdings are consistent with U.S. Supreme Court precedent holding that where a defendant
seeks to use the First Amendment to insulate tortious conduct from liability, the court must balance
First Amendment concerns against other rights allegedly violated.   *See, e.g., Dun & Bradstreet, Inc. v.
Greenmoss Builders, Inc.*, 472 U.S. 749, 757 (1985) (in a defamation action, the court must "balance
the State's interest in compensating private individuals for injury to their reputation against the First
Amendment interest in protecting this type of expression").

must be balanced against Mr. Bollea's privacy rights (as well as his publicity rights and other rights at issue in the FAC), with **all inferences drawn in favor of Mr. Bollea at this stage**. [3]

### 2.      Mr. Bollea's Rights Outweigh Defendants' Rights

"[S]peech on matters of purely private concern is of less First Amendment concern." *Dun & Bradstreet*, 472 U.S. at 759 (internal cites omitted).  In *Snyder v. Phelps*, 131 S.Ct. 1207 (2011), the case upon which Defendants' First Amendment argument predominantly relies, the U.S. Supreme Court held:

> **Not all speech is of equal First Amendment importance**, however, and where matters of purely private significance are at issue, First Amendment protections are often less rigorous.  That is  because restricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest:  There is no threat to the free and robust debate of public issues; there is  no  potential  interference  with  a meaningful dialogue of ideas; and the threat of liability does not pose the risk of a reaction of self-censorship on matters of public import.

*Id.* at 1215-16 (emphasis added; internal cites and quotes omitted); *see also Virgil*, 527 F.2d at 1128 ("We conclude that **unless it be privileged as newsworthy [], the publicizing of private facts is not protected by the First Amendment**.") (emphasis added).

### 3.      Determining Whether a Matter is of Public Concern is a Fact-Specific Inquiry

When evaluating the implications of the First Amendment on a defendant's liability "courts are **required to engage in a fact-sensitive balancing**." *Toffoloni*, 572 F.3d at 1208 (emphasis added) (reversing the district court's granting of a motion to dismiss).  *Snyder* also

---

[3]   *See also*, 1 J. Thomas McCarthy, *The Rights of Publicity and Privacy,* Section 5:100 (2012) ("Generally,  invasion  of  the  intrusion  type  of  privacy  does  not  involve  First Amendment constitutional problems, since the intrusion itself does not, strictly speaking, involve protected 'speech.'); Nimmer, "The Right to Speak from Times to Time: First Amendment Theory Applied to Libel and Misapplied to Privacy," 56 Calif. L. Rev. 935, 957 (1968) ("Intrusion does not raise First Amendment difficulties since its perpetuation does not involve speech or other expression").

clarifies that this fact-specific inquiry is **not appropriate for resolution on a motion to dismiss**. *Snyder*, 131 S.Ct. at 1215-18 ("Whether the First Amendment prohibits holding [defendant] liable for its speech... turn largely on whether that speech is of public or private concern, **as determined by all the circumstances of the case**." (emphasis added)). The Supreme Court explained:

> Deciding whether speech is of public or private concern requires us to examine the content, form, and context of that speech, **as revealed by the whole record**.... In considering content, form, and context, no factor is dispositive, and **it is necessary to evaluate all the circumstances of the speech**, including what was said, where it was said, and how it was said.

*Id.* at 1216 (emphasis added) (internal cites and quotes omitted). In finding that the First Amendment precluded plaintiff's claims, the *Snyder* court reached this determination only after carefully reviewing and discussing **all of the facts** presented **at trial**.[4] *See id.* at 1216-19. The *Snyder* court was careful to instruct that:

> Our holding today is narrow. **We are required in First Amendment cases to carefully review the record, and the reach of our opinion here is limited by the particular facts before us.** As we have noted, the sensitivity and significance of the interests presented in clashes between First Amendment and state law rights counsel relying on limited principles that sweep no more broadly than the appropriate context of the instant case.

*Id.* at 1220 (emphasis added) (internal cites and quotes omitted). Accordingly, it is inappropriate to resolve these issues on a motion to dismiss. Moreover, Justice Breyer's concurring opinion expounded on the narrow holding of First Amendment protection, explaining that the opinion does not "say anything about Internet postings." *Id.* at 1221.

---

[4] The *Snyder* defendants' speech was found to constitute a matter of public concern because "the issues they highlight – the political and moral conduct of the United States and its citizens, the fate of our Nation, homosexuality in the military, and scandals involving the Catholic clergy – are matters of public import." *Snyder*, 131 S.Ct. at 1217. This is significantly different than the private sex video posted to the Internet by the Gawker Defendants.

Gawker's reliance upon *Bartnicki v. Vopper*, 532 U.S. 514 (2001) is equally misplaced, for the reasons discussed in the footnote below.[5]

Plaintiff has not yet had an opportunity to obtain or set forth to the Court "the whole record" or "all of the circumstances of the case" because discovery has not yet even commenced. There may well be substantial information pertaining to the Defendants' activities that will be revealed through discovery and will have a substantial impact on the issues of Defendants' invasion of Plaintiff's privacy rights and exploitation thereof for their commercial gain, and the balancing of privacy rights and community standards with the First Amendment right to report the news.

**B.    The FAC Alleges a *Prima Facie* Case for Publication of Private Facts**

To establish a claim for public disclosure of private facts under Florida law, a plaintiff must show that there was (1) a publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern. *Cape Publ'ns, Inc. v. Hitchner*, 549 So.2d 1374, 1377 (Fla. 1989). As discussed below, Mr. Bollea has sufficiently alleged a *prima facie* case.

---

[5] *Bartnicki* also is cabined by its facts. The participants in the covertly recorded conversation were union officials (including the "chief negotiator" in collective bargaining talks with a Pennsylvania school board) and the subject matter was pending extremely rancorous negotiations coupled with threat of serious violence. *Id.* at 519 ("[B]low off their front porches, we'll have to do some work on some of those guys"). These discussions were clearly matters of public interest. By contrast, that which occurs between two consenting adults in a private bedroom is the quintessential example of matters of non-public interest. Moreover, necessary to an understanding of the ongoing relevance of the *Bartnicki* decision (since Justices Stevens, its author, and Souter are no longer on the Court) is the concurring opinion of Justices Breyer and O'Connor whose assent was predicated upon the fact that "the information publicized involved a matter of unusual public concern, namely, a threat of potential physical harm to others." *Id.* at 535-536. No such matters of "public concern" – "unusual" or mundane – exist here. Following the example set by the Supreme Court in *Snyder* and *Bartnicki*, and as required by the Eleventh Circuit in *Toffoloni*, this Court should engage in the required balancing of First Amendment rights with Mr. Bollea's privacy rights, publicity rights and copyrights, and determine whether Gawker's posting of the footage of the Bollea sex tape is a matter of public concern, only after it has had the opportunity to review "the whole record" and "all the circumstances of the case."

### 1.   <u>Public Disclosure of Private Facts that are Offensive</u>

Mr. Bollea alleges public disclosure by Gawker Defendants' posting of a one minute and forty second "highlight reel" of Mr. Bollea fully naked and engaged in private consensual sex in a private bedroom.  Gawker's posting allowed millions of people to watch this private sexual encounter.  FAC ¶ 30.  Mr. Bollea alleges throughout the FAC that the sexual encounter was private.  It occurred in a private bedroom, where Mr. Bollea had a reasonable expectation of privacy.  FAC ¶¶ 1-2.  Mr. Bollea also alleges that the publication of the video showing him naked and having sex was offensive.  FAC ¶¶ 29, 34.[6]

Gawker does not challenge that the posting of the sex video was a "publication" or that it was "offensive."  Rather, Gawker contends that the private sexual conduct was not private because other websites had reported on the **possible existence** of the video, and had posted a few alleged stills from the video, though they did not publish any actual footage of the video.  First, limited prior disclosure of the fact that a video exists (or might exist) does not eviscerate the private nature of the video.  *Michaels v. Internet Entertainment Group*, 5 F. Supp. 2d 823, 841 (C.D. Cal. 1998).  Second, whether and the extent to which the private conduct was previously disclosed is exactly the sort of factual dispute that is improper to resolve on a motion to dismiss.

Further, Gawker suggests that Mr. Bollea's sexual encounter with Ms. Clem became newsworthy because Mr. Bollea's autobiography allegedly described a prior affair with a different woman.  Motion p. 5.  However, that alleged affair had nothing to do with Ms. Clem or the conduct depicted in the video at issue, or the FAC.  (*See* Exh. 2 to Fugate Decl.

---

[6] Apart from being offensive, both the secret recording, and the distribution thereof, constitutes a felony under Florida's video voyeurism law, Fla. Stat. § 810.145.

filed on November 2, 2012.)  As such, the book did not disclose any of the private facts or conduct posted on the Gawker Site, and they remained private until Defendants' wrongful dissemination.  Mr. Bollea's allegations regarding the private nature of the acts depicted in the video (as discussed immediately above) should be credited and any inferences to be drawn should be resolved in Mr. Bollea's favor.

### 2.     The Video Footage of Mr. Bollea Naked and Having Sex in a Private Bedroom is Not a Matter of Public Concern

Mr. Bollea is required to show only that when all facts alleged are presumed true and all inferences construed in his favor, he has a **plausible claim** that a video depicting him fully naked and having sex in a private bedroom is not a matter of public concern such that all people of the world are entitled to watch it.  The facts as alleged are more than sufficient to meet this standard.  Courts have repeatedly held that private sexual relations are not a matter of public concern, even when they involve public figures.  The Eleventh Circuit has recognized that "even public figures, like actresses, may be 'entitled' to keep private 'some intimate details ... such as sexual relations ...."' *Toffoloni*, 572 F.3d at 1211 (11th Cir. 2009) (citing Restatement (2d) of Torts § 652D, cmt. (h)); *see also, Michaels*, 5 F.Supp.2d at 840 ("even people who voluntarily enter the public sphere retain a privacy interest in the most intimate details of their lives"). The Restatement (Second) of Torts provides that:  "when a photograph is taken without the plaintiff's consent in a private place, or one already made is stolen from his home, the plaintiff's appearance that is made public when the picture appears in a newspaper is still a **private matter**, and **his privacy is invaded**." Restatement (2d) of Torts, § 652D, cmt. (b) (emph. added).  The Restatement also states that "[s]exual relations... are normally **entirely private matters**." *Id*. (emph. added).

Contrary to Gawker's claims, Gawker did not instantly obtain the right to post the **actual footage** of Mr. Bollea's sexual encounter with Ms. Clem on the Internet simply because his autobiography supposedly admitted to a different affair with a different woman. Motion p. 5. To the contrary, "public exposure of one sexual encounter [does not] forever remove[] a person's privacy interest in all subsequent and previous sexual encounters." *Michaels*, 5 F.Supp.2d at 840. Moreover, the alleged "other affair" is outside the allegations of the FAC and thus beyond the scope of a Motion to Dismiss, and irrelevant to this case.

Even if the Court were to find Mr. Bollea's encounter with Ms. Clem to be a matter of public concern, it does not follow that the **actual video and audio footage** of Mr. Bollea naked and having sex in a private bedroom is something that all people of the world should be entitled to watch at Gawker's website. While a news report about private conduct may be newsworthy, publicly displaying a video showing the actual private activity, including full frontal nudity and explicit sexual acts, is not. There is a world of difference between *the fact* and *the act*. Under similar circumstances, the *Michaels* court explained:

> Because they sought fame, [plaintiffs] must tolerate some public exposure of **the fact of their involvement**. The fact recorded on the Tape, however, is not that [plaintiffs] were romantically involved, but rather **the visual and aural details of their sexual relations,** facts which are ordinarily considered **private even for celebrities**.

*Id.* In distinguishing the prior case of *Eastwood v. Superior Court*, 198 Cal.Rptr. 342 (Cal. App. 1983), frequently cited by Gawker, *Michaels* held that *Eastwood* involved "publicity about the **fact** of a famous person's romantic involvement" **not "graphic descriptions of the most intimate aspects of the relationships."** *Michaels*, 5 F.Supp.2d at 840 (emph. added).

The cases cited by Gawker do not contradict this important distinction between reporting on the fact of a private encounter, versus showing the private act itself. Rather, these cases only bolster the need for this important distinction. These cases, including "*Michaels II*", *Lee v. Penthouse International, Ltd.* and *Jones v. Turner* are discussed in the footnote below.[7]

_____

[7] Gawker's reliance on *Michaels v. Internet Entertainment Group, Inc.*, 1998 WL 882848 (C.D. Cal., Sept. 11, 1998) ("*Michaels II*") is wholly unavailing. The broadcast at issue was merely a "Hard Copy" teaser that discussed IEG's "impending release of the [Lee/Anderson] Tape" and did not involve the airing of any actual exerts from the tape itself. *Id*. at *5. Given that fact, it is entirely understandable that the district court found that broadcast to be newsworthy. Indeed, more fundamentally, it is difficult to identify any "private facts" that were publicly disclosed since the true subject of the broadcast was not the sex acts themselves, but rather IEG's impending public release of the tape it had acquired. By contrast, Gawker went much farther by posting the actual content of the sex tape, including full nudity and sexual intercourse. Had "Hard Copy" done the same, *Michaels II* likely would have turned out considerably differently, and consistent with *Michaels I* which granted a preliminary injunction of the release of the private sexual content.

Gawker also relies on *Lee v. Penthouse International, Ltd.*, 1997 WL 33384309 (C.D. Cal., Mar. 19, 1997). In that case, however, the private facts claim appears to have been defeated solely on the grounds that the photos used in the article were already public at the time of the magazine's publication. *Id*. at *6 ("Because the photographs were previously published in three other magazines, they cannot form the basis for liability for public disclosure of private facts"). The same cannot be said of Gawker's broadcast of the Bollea sex tape. And as for the Lee case's discussion of newsworthiness (albeit arising, as it did, in the context of the plaintiffs' publicity rights claim), the court focused on the fact that Pamela and Tommy Lee "discussed their relationship with the media on several occasions." *Id*. at *5. In particular, the opinion cites a Movieline article and a joint appearance on the Howard Stern radio show. Neither Mr. Bollea nor Ms. Clem (nor certainly the two of them jointly) had ever discussed their relationship or sexual escapade in any public form prior to the appearance the Gawker posting.

*Jones v. Turner*, 1995 WL 106111 (S.D.N.Y,. Feb. 7, 1995) [mis-cited by Gawker at pages 13-14 of its Motion] is merely the transcript of a preliminary injunction hearing. It has no bearing on the standard for review of a motion to dismiss. In *Jones* the Court was grappling with a request for a prior restraint. In concluding that the preliminary injunction should be denied, the district court found that there had already been widespread distribution of some of the photos at issue and that "Penthouse has already shipped hundreds of thousands of copies of the article in its magazines to its subscribers and distributors." *Id*. at *21. Thus, if a prior restraint were appropriate, "plaintiff is unable to demonstrate, as she must in this action, that the restraint which she requests would be effective." *Id*. Finally, a New York district judge's from-the-bench musings about what might or might not be newsworthy or "a mater of public interest" has no dispositive effect (or even persuasive value) to this Court, particularly where those musings concern an interpretation of the *sui generis* Sections 50 and 51 of New York's Civil Rights Law.

In *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374 (Fla. 1989), cited repeatedly by Gawker, a newspaper reported on a story involving parents who had physically abused their daughter, including "scrubbing the daughter's bottom and rectum with a steel wool pad." *Id.* The court properly held that the **report** was newsworthy and subject to First Amendment protection because this deplorable conduct was the subject of a public trial. However, if that news media somehow obtained a video of this vile and explicit abuse, and posted it to the Internet for all the world to watch, it is hard to imagine a court permitting the public display of that video – of a naked child being abused by her parents – based on a First Amendment argument by the news media, as compared with the violation of the victim's privacy rights.[8]

Therefore, this claim should not be dismissed.

### C.     The FAC Alleges a *Prima Facie* Case for Intrusion Upon Seclusion

Invasion of privacy by intrusion is defined as follows:

> One who intentionally intrudes, physically **or otherwise**, upon the solitude or seclusion of another **or his private affairs or concerns**, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.

---

[8] In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), cited by Gawker, the U.S. Supreme Court merely held that a newspaper was protected by the First Amendment from liability for privacy violations when it published the **identity** of a rape victim. Again, had the news media obtained and published the **actual video** of the plaintiff being raped, it is unimaginable that the Court would have permitted the media to post that video over the victim's objections. The **fact** of the rape is one thing, but depicting **the act** is completely different. Here, the fact that Mr. Bollea had sex with Ms. Clem may be of public interest or concern, however the video showing them fully naked and having sexual intercourse in a private bedroom is not. Also instructive is *Doe v. Univision Television Group Inc.*, 717 So.2d 63 (Fla. 3d DCA 1998) in which the Court of Appeal reversed a **summary judgment** ruling entered against the plaintiff in a case involving disclosure of the identity of a victim of a bad plastic surgery where the plaintiff had **agreed** to be interviewed, provided her identity was protected by concealing her face and voice. The court did so notwithstanding the fact that it concluded that the subject of the television broadcast, "problems which some local residents had experienced with foreign plastic surgery – is a topic of legitimate public concern." *Id.* at 65. Here, there is no "topic of legitimate public concern" and Mr. Bollea never agreed to be depicted in **any** manner, much less one that would conceal his identity.

Restatement (Second) of Torts, Section 652B (emphasis added).   Mr. Bollea has alleged throughout the FAC that Defendants intentionally intruded upon Mr. Bollea's intimately private affairs.   *See e.g.*, FAC at ¶¶ 67-74.   Moreover, Mr. Bollea has alleged that Defendants' conduct was "offensive and objectionable to Plaintiff, and would be offensive and objectionable to any reasonable person of ordinary sensibilities." FAC, ¶ 69.   Thus, Mr. Bollea has adequately alleged a claim for intrusion upon seclusion.

Gawker merely offers a string-cite of case law, followed by the statement that "[a]s the above authorities make clear [Plaintiff's allegations against Defendants are] insufficient to state a claim for intrusion." Motion, p. 15.   The cases cited by Gawker, however, are inapposite and do not diminish the sufficiency of Mr. Bollea's allegations, as discussed in the footnote below.[9]

### D.  The FAC Alleges a *Prima Facie* Case for Violation of Florida Common Law Right of Publicity

To prevail on a claim for violation of common law right of publicity under Florida law, a party must establish that an individual's name or likeness is used without his consent for the benefit that its value confers on the defendant.   *Agency for Health Care v. Assoc.*

---

[9] *Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156 (Fla. 2003), for example, involved an unwelcome sexual touching and the court held that the intrusion must be in a place where "there is a reasonable expectation of privacy and not [] to a body part." *Id.* at 162 (holding that "this is a tort in which **the focus is the right of a person to be free from public gaze**.") (emphasis added).   In the present case, the intrusion is not an unwanted touching but rather an intrusion into Mr. Bollea's private sexual affairs where Mr. Bollea had a right to be free from the public's gaze.   In *Spilfogel v. Fox Broad. Co.*, 433 F.App'x 724 (11th Cir. 2011), the plaintiff was videotaped on a public street, and the court held that for liability to attach, the offender must intrude "into one's private quarters." *Id.* at 726.   Here, Mr. Bollea's private sexual conduct occurred in a private bedroom, where he had a reasonable expectation of privacy.   In *Stasiak v. Kingswood Co-op, Inc.*, 2012 WL 527537 (M.D. Fla., Feb. 17, 2012), the court held that an inquiry into plaintiff's credit histories was not highly offensive or outrageous to a reasonable person.   Here, unauthorized publication of video footage showing Mr. Bollea naked and having sexual intercourse is vastly more offensive than an inquiry into a credit score.

*Indus.*, 678 So. 2d 1239, 1252, n. 20  (Fl. 1996) (holding that one of the "four types of wrongful conduct that can all be remedied with resort to an invasion of privacy action," is "appropriation – the unauthorized use of a person's name or likeness to obtain some benefit.")  The FAC alleges that "the Gawker Defendants misappropriated Plaintiff's name, likeness, image, identity and persona by using the Video and Narrative for the purpose of commercial gain, without Plaintiff's consent." FAC, ¶ 78.  These allegations plainly allege the unauthorized use of Mr. Bollea's name and likeness to obtain some benefit, and therefore properly allege a violation of common law rights of publicity, as the elements of that claim are set forth in *Agency for Health Care, supra*.[10]

In *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977), the only right of publicity case ever considered by the U.S. Supreme Court, the Court held that a television news station's broadcast of only 15 seconds of the plaintiff's 30 minute human cannonball

---

[10] While Florida also has a statutory claim for unauthorized publication of name or likeness, Fla. Stat. § 540.08, this statutory claim does not supersede common law claims for violation of publicity. Rather, the statute provides that "[t]he remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy." Fla. Stat. § 540.08(7). Gawker has asked the Court to analyze this claim as if it were a claim for a violation of Florida Statute § 540.08, a statutory right of publicity violation. While Defendants rely on certain federal cases that equate the common law and statutory claims and conclude that the elements are "substantially identical," a comparison of the elements of the common law claim as articulated by the Florida Supreme Court in Agency for Health Care, supra, with the elements set forth in Fla. Stat. § 540.08 make clear that they are not equivalent. Indee, the elements of pleading a common law claim are less restrictive. To evaluate the common law claim based on the statutory elements would be to disregard the statutory admonition that "[t]he remedies provided for in this section shall be in addition to and not in limitation of the remedies and rights of any person under the common law." *Id.*

In any event, the allegations of the FAC withstand scrutiny even if the claim were asserted under Fla. Stat. § 540.08. The FAC alleges that Gawker's unauthorized misappropriation of Mr. Bollea's likeness was "for the purpose of commercial gain." FAC, ¶ 78. This is equivalent to an allegation that Mr. Bollea's name and/or image was misappropriated for a "commercial purpose." Thus, even under the narrower statutory elements, the FAC properly alleges a claim for violation of publicity rights. See, e.g., Gritzke v. M.R.A. Holding, LLC, 2002 WL 32107540, *1 (N.D. Fla. Mar. 15, 2002) (denying motion to dismiss publicity claim where "Plaintiff has squarely alleged that defendant published her photograph in Florida for commercial and advertising purposes").

act performed at a state fair constituted a violation of the plaintiff's right of publicity, holding:  "The rationale for protecting the right of publicity is the straight-forward one of preventing unjust enrichment by the theft of good will.  No social service is served by having the defendant get for free some aspect of the plaintiff that would have market value and for which he would normally pay."  *Id.* at 576.[11]

Accordingly, this claim should not be dismissed.

**E.**     **The FAC Alleges a *Prima Facie* Case for Intentional Infliction of Emotional Distress**

Whether conduct which forms the basis of a claim is "outrageous enough to rise to the level required by the tort may be decided as a question of law when the facts of a case can under no conceivable interpretation support the tort. . . but where significant facts are disputed, or where differing inferences could reasonably be derived from undisputed facts, **the question of outrageousness is for the jury to decide.**" *Williams v. City of Minneola*, 575 So. 2d 683, 692 (Fla. 5th DCA, 1991) (emph. added).  In *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278-79 (Fla. 1985), the Florida Supreme Court relied on the definition of extreme and outrageous conduct set forth in Section 46, Restatement (Second) of Torts, which states:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an

---

[11] The parallels to the instant case are instructive.  Gawker sought to commercially exploit Mr. Bollea's fame by posting one minute and forty seconds of the sex tape so that Gawker might reap tremendous financial rewards from doing so at Mr. Bollea's expense.  If Mr. Bollea were to have agreed to allow such footage to be shown to the public, the required fee would have been exorbitant.  *See also* Restatement (Second) of Torts, Section 652C: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."

average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Gawker's argument that the conduct alleged is not outrageous as a matter of law is without merit.  Posting a secretly taped video onto the Internet of a person fully naked and engaged in consensual sexual intercourse in a private bedroom, so that all the world could watch it, certainly is outrageous and, at a minimum, could be determined outrageous by a reasonable jury which is the trier of fact and determiner of the community's moral standards for purposes of a civil lawsuit.  An average member of the community presented with the facts in this case and the video footage that was posted to the Internet (footage secretly taken of Mr. Bollea while he was in a private bedroom and did not know that he was being filmed), could reasonably exclaim "Outrageous!"   Because a conclusion that the conduct is outrageous can reasonably be inferred from the facts alleged, it is inappropriate to dismiss the claim at this stage.  At minimum, Mr. Bollea should be permitted to take discovery and a jury should be permitted to determine whether the conduct at issue is outrageous.

There also is no merit to Gawker's argument that the FAC has not pled facts to establish that Defendants' conduct was intentional or reckless. To support a claim for intentional infliction of emotional distress, "all that need be shown is that [the defendant] intended his specific behavior and knew or should have known that the distress would follow." *Dominguez v. Equitable Life Assurance Soc'y of the U.S.*, 438 So.2d 58, 59 (Fla. 3d DCA 1983), *approved*, 467 So.2d 281 (Fla.1985).  In *Williams, supra* at 690, the court held that "the cause of action should more appropriately be called 'outrageous conduct causing severe emotional distress' because it could involve either the deliberate or reckless infliction of mental suffering."  The FAC alleges intentional conduct by Defendants.  *See, e.g.*, FAC ¶

86 ("The Gawker Defendants acted intentionally and unreasonably in acquiring, viewing, editing, publishing, distributing and disseminating the Video, and creating and publishing the Narrative, when they knew or should have known that emotional distress would likely result"). The intent element therefore is sufficiently pled.

Finally, Mr. Bollea has properly alleged severe emotional distress in alleging that "[a]s a direct and proximate result of the aforementioned acts by Defendants, Plaintiff has suffered substantial monetary damages, including … substantial injury, damage, loss, harm, anxiety, embarrassment, humiliation, shame, and severe emotional distress" (FAC, ¶ 92).

Accordingly, this claim should not be dismissed.

### F. The FAC Alleges a *Prima Facie* Case for Negligent Infliction of Emotional Distress

Florida's "impact rule" provides only that "'before a plaintiff can recover **damages** for emotional distress caused by the negligence of another, the emotional distress must flow from physical injuries the plaintiff sustained in an impact.'" *S. Baptist Hosp. of Florida, Inc. v. Welke*r, 908 So. 2d 317, 320 (Fla. 2005) (emphasis added, internal citations omitted). With certain exceptions, the "impact rule" bars a plaintiff from recovering damages for his or her emotional distress that is caused by another's negligence but does not flow from physical injury. But **the "impact rule" does not bar injunctive relief**. Mr. Bollea seeks injunctive relief in connection with this claim. FAC, ¶ 99. Accordingly, Mr. Bollea's claim for negligent infliction of emotional distress properly states a claim on which **injunctive** relief can be based.

### G. The FAC Alleges a *Prima Facie* Case Under Florida Statutes § 934.10

The Wiretap Statute, Florida Statutes § 934.10 provides, in pertinent part:

> Any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of ss. 934.03-934.09 shall have a civil cause of action against any person or entity whose intercepts, discloses, or uses, or procures any other person or entity to intercept, disclose, or use, such communications and shall be entitled to recover from any such person or entity which engaged in the violation such relief as may be appropriate.

Fla. Stat. § 934.10(1).   To establish a claim, plaintiff must be a Florida resident or the improper "interception" must have occurred in Florida.   *Cohen Bros., LLC v. ME Corp.*, 872 So.2d 321, 324 (Fla. 3d DCA 2004).   Gawker, however, does not argue that Mr. Bollea's claim under the Wiretap Statute is not properly pleaded.   Instead, Gawker argues that because Mr. Bollea does not allege that Gawker (or any of the other Gawker Defendants) played any role in **recording** the video, the claim must fail as a matter of law. None of the cases cited by Gawker in support of this argument, however, specifically make this holding or were decided on a motion to dismiss; rather, each was decided on very case-specific findings and at a much later stage in the proceedings, such as on summary judgment or after a full trial had been conducted on the merits.[12]

---

[12] The U.S. Supreme Court has taken great care to emphasize each time the case involved "the tension between the right which the First Amendment accords to a free press, on the one hand, and the protections which various statutes and common-law doctrines accord to personal privacy against the publication of truthful information, on the other" that the Court was limiting its holding and was "resolving this conflict only as it arose in a discrete factual context." *The Florida Star v. B.J.F.*, 491 U.S. 524, 530 (1989).   The Court went on to clarify the limitations of its holding by saying that: "Nor need we accept appellant's invitation to hold broadly that truthful publication may never be punished consistent with the First Amendment. Our cases have carefully eschewed reaching this ultimate question, mindful that the future may bring scenarios which prudence counsels our not resolving anticipatorily." *Id.* at 532; *see also, e.g., Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 493 & 496 (1975) (sanctioning press for publishing material disclosed in public court documents prohibited by First Amendment and noting "special protected nature of accurate reports of *judicial* proceedings")(emphasis added).   "Indeed, in *Cox Broadcasting*, we pointedly refused to answer even the less sweeping question 'whether truthful publications may ever be subjected to civil or criminal liability' for invading 'an area of privacy' defined by the State." *Florida Star*, 491 U.S. at 533 (quoting *Cox Broad.*, 420 U.S. at 491).   "We continue to believe that the sensitivity and significance of the interest presented in clashes between First Amendment and privacy rights counsel relying on limited

Similarly, Gawker argues that it had a good faith basis for believing that its conduct was

protected by the First Amendment and that the statute itself provides a complete defense to

liability based on Gawker's good faith belief.  While the Wiretap Statute does provide that "[a]

good faith reliance on…[a] good faith determination that Florida or federal law… permitted the

conduct complained of shall constitute a complete defense to any civil or criminal, or

administrative action arising out of such conduct under the laws of the state," evaluation of such

a good faith reliance defense involves **questions of fact** and therefore is appropriately suited for

determination on a motion for summary judgment or after a trial on the merits.  Fla. Stat. §

934.10(2)(c); *see Wood v. State of Fla.*, 654 So.2d 218 (Fla. 1st DCA 1995) ("it would be a jury

determination regarding whether the defendant acted in good-faith reliance on a good-faith

determination"); *Brillinger v. City of Lake Worth*, 978 So.2d 265, 268 (Fla. 4th DCA 2008)

(affirming trial court's granting of summary judgment based on good faith exception).

Accordingly, this claim should not be dismissed

## IV.     CONCLUSION

For the foregoing reasons, plaintiff Terry Bollea respectfully requests that Gawker's

Motion to Dismiss [Dkt. 10] be denied in its entirety.  If the Court finds that any portion of the

motion should be granted, Mr. Bollea respectfully seeks leave to amend his First Amended

Complaint to correct any deficiencies pursuant to Federal Rule of Civil Procedure 15(a).

---

principles that sweep no more broadly than the appropriate context of the instant case." *Id.*  None of the cases cited by Gawker hold that the publication on a website of an unlawfully recorded videotape with audio footage of a plaintiff naked and having sex in a private bedroom may never be punished consistent with the First Amendment.  Accordingly, the defenses and factual issues raised by Gawker are more appropriately considered at a later stage in the proceedings, and Gawker's motion to dismiss must be denied on this ground.

Respectfully Submitted,

DATED: January 22, 2013

  /s/ Kenneth G. Turkel
Kenneth G. Turkel, Esq.
Florida Bar No. 867233
kturkel@bajocuva.com
Christina K. Ramirez
Florida Bar No. 0954497
cramirez@bajocuva.com
**BAJO CUVA COHEN & TURKEL, P.A.**
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Telephone:  (813) 443-2199
Facsimile:  (813) 443-2193


Charles J. Harder, Esq.
Email: CHarder@HMAfirm.com
**HARDER MIRELL & ABRAMS LLP**
1801 Avenue of the Stars, Suite 1120
Los Angeles, CA 90067
Tel: (424) 203-1600
Fax: (424) 203-1601

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of January 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send a notice of electronic filing to all persons registered to receive notice via the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants.

/s/ Kenneth G. Turkel
Attorney