UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY GENE BOLLEA professionally
known as HULK HOGAN,

    Plaintiff,

                                   Case No.:  8:13-CV-00001-JDW-AEP

vs.

HEATHER CLEM; GAWKER MEDIA,
LLC aka GAWKER MEDIA; GAWKER
MEDIA GROUP, INC. aka GAWKER
MEDIA; GAWKER ENTERTAINMENT,
LLC; GAWKER TECHNOLOGY, LLC;
GAWKER SALES, LLC; NICK DENTON;
A.J. DAULERIO; KATE BENNERT AND
BLOGWIRE HUNGARY SZELLEMI
ALKOTAST HASZNOSITO KFT,

    Defendants.

_____/

**DEFENDANT GAWKER MEDIA, LLC'S**
**OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

      Attempting to circumvent several independent bases for this Court's exercise of removal

jurisdiction over this action, plaintiff has engaged in blatant fraudulent joinder; has utterly

mischaracterized the nature of his actual claims, which include federal questions at their core;

and has misstated applicable law.  Plaintiff's Motion for Remand should be denied.

      First, when the fraudulently joined claims against Heather Clem are disregarded, this

Court has diversity jurisdiction over this action.  Having unsuccessfully litigated his claims in

*Bollea I* and while fully-briefed, substantive motions were awaiting adjudication in both this

Court and the Court of Appeals, plaintiff dismissed that action and re-filed the same claims in

*Bollea II* in state court.  In so doing, he joined them with claims arising out of different acts and

alleged injuries that occurred six years earlier, in a transparent effort to deprive this court of

jurisdiction.  These are the exact circumstances calling for a finding of fraudulent joinder/ misjoinder – particularly where his filing of successive actions wasted substantial resources of Gawker, this Court and the Eleventh Circuit.  *See* Fed. R. Civ. P. 1 & 41(d).  *See* Part I *infra*.

Second, this Court has federal question jurisdiction based on plaintiff's multiple invocations of federal law.  Although plaintiff now disavows his Complaint's references to the Constitution as superfluous, his assertion is flatly contradicted by his *repeated* substantive arguments that the privacy interest he seeks to enforce is a federal constitutional right.[1]  *See* Part II.A.  Similarly, his repeated challenges to both the ownership and dissemination of the Gawker Story and the Excerpts, and his request to transfer all right, title and interest in the Video to him, are governed exclusively by the Copyright Act and present removable federal questions as a matter of law.  *See* 17 U.S.C. § 301, 28 U.S.C. § 1338, 28 U.S.C. § 1454.  *See* Part II.B.

Finally, because consent is required only by "defendants who have been properly joined and served," 28 U.S.C. § 1446(b)(2)(A), Heather Clem's consent is not required.  At the time of removal, Mrs. Clem had not been properly served with the Amended Complaint.  And, while plaintiff concedes that fraudulent joinder excuses consent in the diversity context, the same is true for federal question removal under both the removal statutes, including the recently-enacted copyright removal statute, *see* 28 U.S.C. § 1454, and applicable law.  *See* Part III.

---

[1] This is just the latest in a series of plaintiff's material misstatements, which include his: (a) repeated citation to *Michaels v. Internet Entm't Grp., Inc.*, 5 F. Supp. 2d 823 (C.D. Cal. 1998), without mentioning two subsequent rulings directly on point, *see* 1998 WL 35242549 (C.D. Cal. Feb. 27, 1998); 1998 WL 882848 (C.D. Cal. Sept. 11, 1998); (b) repeated citation to *Toffoloni v. LFP Publ'g Grp., LLC*, 572 F.3d 1201 (11th Cir. 2009), without mentioning the subsequent opinion in that case limiting claims against defendants with a good faith belief that their use involves a matter of public concern, *see* 483 F. App'x 561, 563-64 (11th Cir.) (*per curiam*), *cert. denied*, 133 S. Ct. 792 (2012); (c) repeated assertions that irreparable harm is *presumed* in a copyright case if a plaintiff demonstrates a likelihood of success on the merits, *see, e.g.*, *Bollea I*, Dkt. 60 at 2, 8-9, 12, even though that assertion has not been good law for a number of years, *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006); (d) repeated assertions that the First Amendment had no bearing on his copyright claim, *see Bollea I*, Dkt. 60 at 2, 3, 5, 6, 8, even though governing Eleventh Circuit authority decisively holds otherwise, *see Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1263-65, 1277 (11th Cir. 2001); and (e) repeated demands – including in his most recent Complaint, at 26 ¶ 7 – for a pre-litigation constructive trust on defendants' assets, even though governing law precludes that relief, *see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999), authority which this Court previously held bars such relief *in this dispute*, *see Bollea I*, Dkt. 47 at 8 n.9.

## ARGUMENT

### I.   THIS COURT HAS DIVERSITY JURISDICTION OVER PLAINTIFF'S CLAIMS AGAINST THE GAWKER DEFENDANTS.

#### A.   Claims Against Heather Clem Have Been Fraudulently Joined/Misjoined.

Even where there is not complete diversity, "[a]n action may nevertheless be removable if the joinder of non-diverse parties is fraudulent." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). The court is permitted to disregard the citizenship of any fraudulently joined parties when determining whether complete diversity exists. *Id.* at 1360; *see also Stone v. Zimmer, Inc.*, 2009 WL 1809990, at *4 (S.D. Fla. June 25, 2009) (same).[2]

First, fraudulent joinder occurs where, as here, there is no actually viable claim against the fraudulently joined defendant. *See Legg v. Wyeth*, 428 F.3d 1317, 1324-1325 (11th Cir. 2005). Plaintiff's claims against Mrs. Clem arise almost entirely out her alleged *recording* of the Video in 2006 and are therefore time barred by Florida's four-year statute of limitations.[3] Moreover, to the extent plaintiff also vaguely complains about Mrs. Clem's alleged *disclosure* of the Video, he has not alleged facts that would constitute:

> (a) publication by her, as required to state a claim for publication of private facts, *compare Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. 5th DCA 1991) (publication must be "to the public at large or to so many persons that the matter must be regarded as substantially certain to become public knowledge") *with* Compl. ¶ 39 (alleging that Mrs. Clem "disclos[ed] the [Video] *to third parties*, which *then resulted* in excerpts . . . being posted on the Gawker Site," without alleging any facts about who these third parties were, whether she had any reason to believe the Video would be widely

---

[2] Plaintiff does not dispute that the amount in controversy requirement is met in this case, and could not, at any rate, credibly do so. *See* Notice of Removal ¶¶ 35-37.

[3] *See, e.g.*, Fla. Stat. §§ 95.11(3)(a) & 95.11(3)(o) (four-year limitations period for intentional and negligent torts); *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1280-81 (11th Cir. 2003) (under Florida law, discovery rule only applies where expressly provided for by statute) (citing *Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002)). *See also Bollea I*, Dkt. 28 at 4 nn.12-13 (detailing statements by Bubba the Love Sponge Clem and others that plaintiff knew about and was in on release of Video, including that his "'surprise' at the tape being leaked is a ruse and that he's known about it for years and even had the ability to stop the sale last year.").

disseminated or the connection, if any, between these unnamed "third parties" and Gawker) (emphasis added); *id.* at ¶¶ 50, 86 (same);

(b) intentional conduct, as required to an state intentional infliction claim, where plaintiff has not alleged that Mrs. Clem intended that Gawker would publish the Excerpts or was even aware of that possibility, *id.*; or

(c) physical injuries, as required to state a claim for negligent infliction of emotional distress, *see Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995).

In the absence of any viable claim against Mrs. Clem, her joinder does not defeat diversity.[4]

Second, fraudulent joinder also occurs when "a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998); *see also Tapscott*, 77 F.3d at 1360 ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action."). A plaintiff fraudulently misjoins two sets of claims where, as here, the claims against the diverse and non-diverse defendants do not satisfy Federal Rule of Civil Procedure 20 and the misjoinder was "egregious." *Id.* Under Rule 20, joinder of defendants "requires: (1) a claim for relief [a] asserting joint, several, or alternative liability *and* [b] arising from the same transaction, occurrence or series of transactions or occurrences, *and* (2) a common question of law or fact." *Id.* (emphasis added); *see also* Fed. R. Civ. P. 20(a)(2).[5]

---

[4] In contrast to his extraordinary pursuit of Gawker, plaintiff has made no effort to litigate his claims against Mrs. Clem. Ex. A (docket). Plaintiff also repeatedly describes Mrs. Clem's refusal to settle, contrasting it with her ex-husband's settlement within two weeks of being sued, including his assignment of rights in the Video to plaintiff. *See* Mot. at 3, 12. Rather than suggesting that Mrs. Clem is an unrepentant litigant, it would appear that *Mr.* Clem promptly settled because he was at fault and that *Mrs.* Clem is unconnected to the disclosure of the Video, including because it is against her interest to circulate footage of herself engaging in extramarital sexual conduct.

[5] Plaintiff incorrectly asserts that, to find fraudulent misjoinder, this Court must conclude that *each* prong is lacking. *See* Mot. at 7-9 (arguing "prongs are phrased in the conjunctive" and each is "necessary"). While each prong is required to find joinder proper, the absence of one prong renders joinder improper for purposes of fraudulent misjoinder of a non-diverse defendant in the removal context. *See Stone*, 2009 WL 1809990, at *2. Accordingly, Gawker need not also show that there are no common questions of law or fact between the two sets of

4

Here, the two sets of claims – though nominally connected by the Video and certain related legal issues – do not otherwise satisfy this test.  In particular, while plaintiff's claims against Mrs. Clem arise principally out of her alleged *recording* of the Video, *see* Compl. ¶¶ 1-2, 5, 26, 38, his claims against Gawker arise exclusively out of the *publication*, roughly six years later, of the Gawker Story and Excerpts, *see id.* at ¶¶ 1, 27, 28, 57.  *See also* Removal Notice ¶¶ 16, 17, 23.  In addition, while plaintiff alleges, *in the vaguest terms possible*, that Mrs. Clem violated plaintiff's rights "by disclosing the [Video] *to third parties*, which *then resulted* in excerpts . . . being posted on the Gawker Site," Compl. ¶ 39 (emphasis added), he does not allege that any of the Gawker Defendants actually received the Video from Mrs. Clem, or that there has been any joint action of any kind between any of the Gawker Defendants and Mrs. Clem.  To the contrary, plaintiff requests an order requiring that Gawker disclose the source(s) who provided it with the Video.  *See id.* at 25 ¶ 6.  Accordingly, Mrs. Clem and the Gawker Defendants "are properly viewed as *successive*, rather than *joint* tortfeasors," and are therefore misjoined.  *Stone*, 2009 WL 1809990, at *4 (emphasis added).

Moreover, the misjoinder in this case was undeniably "egregious."  *Tapscott*, 77 F.3d at 1360.  Plaintiff's transparent effort to prevent this Court from continuing to adjudicate claims in the forum he himself originally chose, *see* Removal Notice ¶¶ 1, 3-13, 34, easily qualifies.  *See Rudder v. K Mart Corp.*, 1997 WL 907916, at *6 (S.D. Ala. Oct. 15, 1997) (finding misjoinder "fraudulent" where it was "abundantly clear to the court that the attempted joinder is nothing more than a transparent artifice to defeat the diversity jurisdiction of this court"); *In re Fosamax*, 2012 WL 1118780, at *5 (D.N.J. Apr. 3, 2012) ("the Court concludes that joinder was undertaken

_____

claims.  *See, e.g., Lopez v. Sturdivant*, 2010 WL 3121750, at *3 n.2 (S.D. Miss. Aug. 6, 2010) (even where "there could be some slight overlap in the proof relevant to the claims against defendants, . . . this is not a sufficient connection to warrant joinder of plaintiffs' disparate claims against the two defendants."); *In re Baycol Prods. Liab. Litig.*, 2002 WL 32155269, at *2-3 (D. Minn. July 5, 2002) (although legal issues were common to all claims, joinder was improper where they did not "arise from the same basic set of facts").

to thwart Defendants' statutory right of removal to federal court, and therefore, Plaintiffs' claims are fraudulently misjoined"); *Davis v. Cassidy*, 2011 WL 6180054, at *6 (E.D. La. Dec. 13, 2011) (finding that misjoinder was "egregious" based on "evidence of plaintiff's effort to bring all defendants into a single action in order to defeat federal jurisdiction"); *Juneau v. Ducote*, 2005 WL 2648861, at *4 (W.D. La. Oct. 17, 2005) (misjoinder was "egregious" where facts suggested parties were dubiously joined specifically in order to avoid a judge who "had previously rejected claims identical" to the ones asserted); *see also Legg*, 428 F.3d at 1325 ("The removal process was created by Congress to protect defendants.  Congress 'did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.'").

**B.     Plaintiff's Arguments to the Contrary are Without Merit.**

**1.     Each Set of Claims Involves Distinct Conduct and Claimed Injuries.**

First, to overcome this result, plaintiff alleges that defendants' separate conduct, despite separation of six years, "combine[d] to cause a single injury."  Mot. at 7, 10.  Florida law is clear, however, that "an initial wrongdoer who causes an injury is not to be considered a joint tortfeasor" with a wrongdoer who causes a subsequent and distinct injury.  *D'Amario v. Ford Motor Co.*, 806 So. 2d 424, 435-37 (Fla. 2002) *abrogated on other grounds by* Fla. Stat. § 768.81(1)(a) (statute addressing crashworthiness cause of action for automobile accidents); *see also Ass'n for Retarded Citizens-Volusia, Inc. v. Fletcher*, 741 So. 2d 520, 524 (Fla. 5th DCA 1999) ("medical provider who aggravates an injury inflicted by the original tortfeasor is not considered a joint tortfeasor, but instead a distinct and independent tortfeasor").

This principle applies with equal force to plaintiff's claims here because any tort committed by Mrs. Clem would have been fully completed before any subsequent act of publication by Gawker.  For instance, the causes of action asserted against Mrs. Clem arising out

of her recording of the Video – whether intrusion, intentional or negligent infliction of emotional distress or violation of the Florida Wiretap Act (Counts I, VI, VII, and VIII) – would have been completed in 2006 and, statute of limitations issues aside, would not depend in any way on any subsequent publication by Gawker or anyone else. *See, e.g.*, *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1308 (M.D. Fla.) (claim for intrusion is based solely on act of intrusion, without any subsequent publication), *aff'd*, 627 F.3d 833 (11th Cir. 2010).  Indeed, because the tort of intrusion "is completed with the obtaining of the information by improperly intrusive means," in "analyzing a claimed breach of privacy, injuries from intrusion and injuries from publication should be kept clearly separate."  *Pearson v. Dodd*, 410 F.2d 701, 704-05 (D.C. Cir. 1969).[6]

Similarly, any causes of action arising out of Mrs. Clem's alleged dissemination of the Video would also not depend on any subsequent acts by the Gawker Defendants.  If Mrs. Clem can be liable for disseminating the Video, it is because she personally disclosed it to unnamed "third parties," Compl. ¶ 39, *not* because Gawker subsequently published *different* allegedly private facts – *i.e.*, the Excerpts, as opposed to the full Video.  *See The Putnam Berkley Grp., Inc. v. Dinin*, 734 So. 2d 532, 535 (Fla. 4th DCA 1999) (privacy claim arising out of an act of publication accrues at time of initial publication) (citing Fla. Stat. §§ 770.05 & 770.07).[7]  Thus, each defendant's liability, if any, would be would independent of the other's.

_____

[6] The separate nature of these claims is further illustrated by *Boehner v. McDermott*, which involved a Florida couple's interception of a Congressman's telephone conversation, and its subsequent disclosure to another Congressman and then to the media.  Although claims were asserted for both interception and dissemination under the Federal Wiretap Act, they were addressed in two separate proceedings.  *See Boehner v. McDermott*, 191 F.3d 463, 465 (D.C. Cir. 1999) (subsequent history omitted).

[7] Moreover, Mrs. Clem's prior conduct is irrelevant as a matter of law to the claims against the Gawker Defendants, *even if* she violated criminal laws in allegedly creating the Video and *even if* the Gawker Defendants were aware of that violation when Gawker published the Excerpts.  *See Bartnicki v. Vopper*, 532 U.S. 514, 535 (2001); *Boehner v. McDermott*, 484 F.3d 573, 586 (D.C. Cir. 2007) (*en banc*) (opinion of Sentelle, J., which speaks for the majority on this point, *see* 484 F.3d at 582; *see also id.* at 581 ("a majority of the members of the Court . . . join Part I of Judge Sentelle's" opinion) (Griffith, J., concurring)); *see also Pearson*, 410 F.2d at 705 ("where the claim is that private information concerning plaintiff has been published, the question of whether that information is genuinely private or is of public interest should not turn on the manner in which it has been obtained").

Such successive conduct and claimed injuries are insufficient to defeat removal, as illustrated by *Stone*, which plaintiff attempts in vain to distinguish from the circumstances presented here. *See* Mot. at 7, 9 (discussing *Stone*, 2009 WL 1809990). In *Stone*, the plaintiff attempted to join two sets of claims arising out of hip replacement surgery, one set against an out-of-state corporation (Zimmer) that manufactured the allegedly defective hip implant and another set against a Florida doctor for the alleged misdiagnosis, one year later, of the injuries previously caused by the implant. 2009 WL 1809990, at *1. After Zimmer removed the action, the Court denied plaintiff's motion for remand, holding that the two sets of actions had been fraudulently misjoined because the two defendants were "properly viewed as *successive*, rather than *joint* tortfeasors." *Id.* at *4 (emphases added).[8] Thus, even though the two sets of successive claims were related in precisely the same fashion as in this case – *i.e.*, the conduct giving rise to the second set of injuries would not have happened had the first set of injuries not previously occurred – the Court nonetheless rejected the argument, advanced by plaintiff here, that the defendants' conduct "combine[d] to cause a single injury." *Id.*[9]

---

[8] *See also, e.g.*, *Hughes v. Sears, Roebuck & Co.*, 2009 WL 2877424, at *6 (N.D.W. Va. Sept. 3, 2009) (products liability claim against seller of treadmill and medical malpractice claim against doctor who subsequently misdiagnosed plaintiff's injuries from treadmill accident were fraudulently misjoined); *Lopez v. Sturdivant*, 2010 WL 3121750, at *3 (S.D. Miss. Aug. 6, 2010) (claims against home builder for defective construction and against home insurer relating to coverage for damage allegedly caused by defective construction were fraudulently joined because they "involve[d] distinct litigable events which ar[o]se out of separate allegations of wrongdoing occurring at separate times"); *Nsight Techs., LLC v. Fed. Ins. Co.*, 2009 WL 1106868, at *4 (S.D. Miss. Apr. 23, 2009) (claims against former employee for conversion and against insurance carrier relating to coverage of losses caused by alleged embezzlement were fraudulently misjoined because, "[w]hile the claims against [both defendants] arise out of the alleged embezzlement, the claims involve different factual issues and different legal issues").

[9] For that reason, *Stone* properly distinguishes the three cases on which plaintiff relies, 2009 WL 1809990, at *3, in which products liability and malpractice claims could be joined because a product failed *during* a medical procedure and caused the *same* injury at the *same* time. *See* Mot. at 9 (citing *Ash v. Providence Hosp.*, 2009 WL 424586, at *8 (S.D. Ala. Feb. 17, 2009) (no fraudulent joinder of claims against manufacturer of heparin and doctor administering it because claims involved "single injury, to wit, the personal injuries [plaintiff] sustained after being administered heparin during his surgery"); *Greene v. Novartis Pharm. Corp.*, 2007 WL 3407429, at *4 (M.D. Ga. Nov. 14, 2007) (no fraudulent joinder where claims against manufacturer of medical cream were joined against prescribing doctor because "[p]laintiffs' claims involve the same injury cause by the same drug"); *Shreffler v. Philippon*, 873 So. 2d 1280 (Fla. 4th DCA 2004) (surgeon and manufacturer of device with which surgeon allegedly injured plaintiff were properly joined in the same action)). Those cases are unlike joinder of claims for recording the Video and publishing the Excerpts, which are legally distinct occurrences causing separate injuries.

## 2.    Plaintiff's Vague Assertions of a Connection are Insufficient.

Plaintiff's assertion that the two sets of claims are properly joined because of Mrs. Clem's supposed acts resulting in Gawker obtaining the Video is equally without merit.  His Complaint not only fails to allege any such actual conduct, but his motion concedes his complete lack of any factual basis for such a contention.  *See, e.g.*, Mot. at 8 ("Discovery against both Heather Clem and the Gawker Defendants will reveal the specific actions that Heather Clem took which allowed the Gawker Defendants to obtain the [V]ideo."); *id.* ("*Whatever Heather Clem's and the Gawker Defendant's specific involvement with one another*, Bollea had valid claims against all such named defendants . . . .") (emphasis added).  The actual language of plaintiff's Complaint conspicuously does not allege that Mrs. Clem provided the Video to any of the Gawker Defendants, or to anyone else with the intention, or awareness of the possibility, that the Video would later be provided to them.  Instead, all that is alleged is that Mrs. Clem "disclos[ed] the secretly-filmed video to *third parties*, which *then resulted* in excerpts . . . being posted on the Gawker Site," without stating who these third parties were, when these alleged disclosures took place, or the connection, if any, between these unnamed "third parties" and any of the Gawker Defendants.  Compl. ¶ 39 (emphasis added); *see also id.* at ¶¶ 50, 86 (same).

Merely alleging in some vague fashion that Mrs. Clem disclosed the Video to *someone* and that this disclosure played some *undefined* causal role in Gawker's ultimate receipt of the Video is insufficient as a matter of law to deem the claims properly joined.[10]  In the fraudulent

---

[10] Plaintiff also speculates, based on nothing whatsoever, that discovery *might* reveal that Gawker directly or indirectly paid Mrs. Clem for the Video.  Mot. at 8.  But nothing even remotely like that is pleaded in the complaint, and it otherwise contradicts the Gawker Story, incorporated by reference into the Complaint, *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997), which expressly states: "Last week, a burned DVD copy of Hulk having sex with the woman rumored to be Heather Clem (Bubba's ex-wife), was delivered to us through an anonymous source.  They wanted no payment.  They wanted no credit."  http://gawker.com/5948770/even-for-a-minute-watching-hulk-hogan-have-sex-in-a-canopy-bed-is-not-safe-for-work-but-watch-it-anyway.

joinder context, the facts alleged by plaintiff must be sufficient to provide a court with a "reasonable basis" – as opposed to a mere "theoretical" possibility – for concluding that the non-diverse defendant was properly joined. *Legg*, 428 F.3d at 1324-25 & n.5; *see also Bayliss v. Cox Radio, Inc.*, 2010 WL 4023459, at *2 (M.D. Fla. Oct. 13, 2010) ("'[U]pon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis for joinder by any means available.'") (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)). Vague allegations attempting to link different defendants to each other do not establish that joinder was proper. *See Lyons v. Am. Tobacco Co.*, 1997 WL 809677, at *4 (S.D. Ala. Sep. 30, 1997) (mere "assertion of a conspiracy among the defendants" insufficient to make them properly joined and defeat removal); *Fosamax*, 2012 WL 1118780, at *5 (finding fraudulent misjoinder where vagueness of allegations made it impossible to discern any meaningful connection between parties). Plaintiff's contention that all will be revealed in discovery is similarly insufficient to defeat removal. *See Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368, 1376-77 (S.D. Ala. 2009) (finding fraudulent joinder and rejecting "premise . . . that a plaintiff is free to sue anyone without any inculpating evidence whatsoever, so long as he also lacks conclusive exculpating evidence"). Thus, Mrs. Clem was fraudulently joined, her claims should be severed and remanded, and plaintiff's Motion should otherwise be denied.

## II.     THIS COURT HAS FEDERAL QUESTION JURISDICTION.

### A.     Claims Alleging that Gawker Violated the United States Constitution.

Plaintiff concedes that removal is proper where, as here, the complaint raises a "federal question that is . . . 'disclosed upon the face of the complaint.'" Mot. at 13 (citations omitted). He further concedes that his Complaint expressly seeks to vindicate the "'rights of privacy as recognized under the United States Constitution.'" Mot. at 13 (citing Compl. ¶¶ 6, 67); *see also*

Compl. ¶ 38 (same).  Although plaintiff is the master of his own claim, Mot. at 5, and removal jurisdiction "may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986), these are plaintiff's *own* allegations.

Where, as here, a federal question "is part of the plaintiff['s] cause of action, as demonstrated by the words [he] selected," a federal court has removal jurisdiction over the case. *Country Club Estates, L.L.C. v. Town of Loma Linda*, 213 F.3d 1001, 1004 (8th Cir. 2000).  In *Loma Linda*, as here, the "complaint quite clearly allege[d] a violation of the federal Constitution at several points," namely a violation of "'the Statutes and Constitution of Missouri and the Constitution of the United States of America, including those provisions [mandating] due process of law.'"  *Id.* at 1003.  Although plaintiffs sought remand, asserting "that most of their complaint alleges violations of state law," the Court found their "reference to the Constitution of the United States [to be] unequivocal," affirming the denial of plaintiff's motion and the assertion of removal jurisdiction.  *Id.*[11]

Here, despite having clearly alleged violations of privacy rights protected by the United States Constitution, plaintiff contends that these "statements . . . do not confer federal question jurisdiction" for several reasons, each of which does not withstand reasonable scrutiny.  First, plaintiff offers a string citation of authorities that purport to stand for the unremarkable proposition that a mere mention of federal law, by itself, is not sufficient to establish federal jurisdiction.  *See* Mot. at 13-15.  But these authorities simply do not support his argument.  They

---

[11] *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (because "the plaintiff [is] the master of the claim," he "may avoid federal jurisdiction by *exclusive* reliance on state law") (emphasis added); *Lundeen v. Canadian Pac. R.R. Co.*, 342 F. Supp. 2d 826, 829 (D. Minn. 2004) (complaint in which single count alleged violation of "applicable state law . . . as well as United States law" triggers federal question removal jurisdiction because "[i]t is part of [plaintiffs'] cause of action, as demonstrated by the words they themselves selected."); *Baker v. Autos, Inc.*, 2012 WL 1378309, at *4 (D.N.D. Apr. 19, 2012) (because plaintiff "unequivocally states on the face of her complaint that 'Defendants have intentionally failed to comply'" with the federal Truth-in-Lending Act, she "has chosen to invoke federal law in her complaint" and court has removal jurisdiction); *Webb v. Mo. Dep't of Social Servs.*, 2011 WL 2792465, at *1 n.1 (W.D. Mo. July 18, 2011) (because plaintiff "pleaded a violation of the U.S. Constitution" and state law violations, plaintiff stated federal question warranting denial of motion for remand).

either (a) involve vague references to unspecified "federal law,"[12] (b) reject incomprehensible allegations, often by pro se plaintiffs,[13] (c) do not turn on the "resolution of a substantial question of federal law,"[14] or are simply not removal cases at all.[15]  By contrast, in this case, plaintiff is unequivocally relying on the Due Process Clause in a manner he himself asserts is dispositive.

Second, plaintiff erroneously asserts that (a) his complaint contains only a "**singular mention**" of the Constitution, Mot. at 15 (emphasis in original); (b) plaintiff "has only ever intended to utilize state law as the basis for his privacy tort claims," *id.*; and (c) Gawker's Motion to Dismiss "discuss[ed] only Florida cases or federal cases applying Florida law regarding privacy," *id.* at 15-16.  These assertions are demonstrably false and, with respect, extend beyond the bounds of permissible advocacy.  Plaintiff's Complaint *repeatedly* and expressly references the U.S. Constitution.  *See* Compl. ¶¶ 6, 38, 67.  Plaintiff has *repeatedly*

---

[12] *See Rabinowitz v. Benson*, 1992 WL 309808, at *1 (S.D.N.Y. Oct. 9, 1992) (wrongful discharge complaint alleging only violation of "state and federal law"); *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 692 (5th Cir. 1995) (complaint alleging "violation of not only State law but also Federal law"); *Casey v. Midwest Title Serv., Inc.*, 2006 WL 2862457, at *2 (N.D. Okla. Oct. 4, 2006) ("The complaint does not specify what federal law may be at issue"); *Maguire v. Telcom Global Solutions, Inc.*, 2003 WL 124475, at *1-2 (N.D. Tex. Jan. 10, 2003) (claim asserting "violations of unspecified state and federal . . . statutes" that "in no way specify – or even remotely imply – any particular" law); *W.L.D. v. Ky. High Sch. Athletic Ass'n*, 2010 WL 4696860, at *1 (E.D. Ky. Nov. 12, 2010) (complaint cited "no specific Amendment to the United States Constitution or any federal statute or other law").

[13] *See Shelley's Total Body Works v. City of Auburn*, 2007 WL 765205, at *3 (W.D. Wash. Mar. 9, 2007) (in case challenging handling of permits, plaintiffs' pro se complaint was "difficult to comprehend," such that it was "unclear what claims Plaintiffs may be attempting to assert" or "what claims Plaintiffs may be attempting to maintain"); *Matthews v. Stewart*, 207 F. Supp. 2d 496, 498 (M.D. La. 2001) ("plaintiff has merely made references to two federal laws, without any factual basis or explanation" and the "court is not bound by the stray labels placed on plaintiff's claims"); *McGee v. Town of Rockland Zoning Bd.*, 863 F. Supp. 2d 108, 110 (D. Mass. 2012) (use of terms "such as 'fundamental fairness' and 'penumbra' to cloak what is otherwise a 'bare allegation of a violation of due process'" is "not sufficient to confer federal jurisdiction").

[14] *See Peele v. Enter. Leasing Co.*, 979 F. Supp. 1069, 1071 (E.D. Va. 1997) ("reference to federal law is merely an expression of Virginia public policy and not a reliance on the federal statute as a basis for the claim"); *Warrington Sewer Co. v. Tracy*, 463 F.2d 771, 772 (3d Cir. 1972) (where defendant allegedly breached contract for purchase of sewer plant, there was no "possibility of a conflict with the Constitution, and accordingly there is no federal question jurisdiction"); *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1062-63 (6th Cir. 2008) (passing reference to Constitution insufficient to create federal jurisdiction over claims under Ohio Open Meetings Law, including right to name clearing hearing); *Julien v. Meyers*, 2009 WL 1382953, at *4 (E.D. Mo. May 14, 2009) ("A violation of the federal constitution is not an essential element of plaintiff's negligence per se claim.").

[15] *Daggett v. Key*, 123 F. App'x 721, 722 (7th Cir. 2005) (affirming dismissal under *Rooker-Feldman* doctrine, where *plaintiff* sought to be in federal court in collateral attack on rulings by state judge).

placed the Due Process Clause of the United States Constitution at the center of his claims, both

in *Bollea I* and in this action.  For example, in his Opposition to Defendants' Motion to Dismiss

in *Bollea I* (which was fully briefed at the time plaintiff dismissed that case), plaintiff argued:

> "Both the rights to freedom of speech and freedom of the press, as guaranteed by
> the First Amendment, and the right to privacy, as guaranteed by the Due Process
> Clause, are fundamental constitutional rights.  The Constitution directs no
> hierarchy between them.  Thus, courts are required to [balance the rights] in order
> to protect the Constitution as a whole." . . .  The First Amendment, therefore, does
> not automatically trump any competing interests or rights. . . .  Rather,
> Defendants' First Amendment rights must be balanced against Mr. Bollea's
> privacy rights.

*Bollea I*, Dkt. 67 at 4-5 (quoting *Toffoloni v. LFP Publ'g Grp.*, 572 F.3d 1201, 1207-08 (11th

Cir. 2009)).  Plaintiff then devoted several additional pages of his brief to argue how to balance

these two supposedly equivalent federal constitutional rights.  *Id.* at 5-7.

Similarly, in plaintiff's emergency Motion for Injunction Pending Appeal in the Eleventh

Circuit (which likewise was fully briefed and awaiting adjudication at the time he dismissed

*Bollea I*), plaintiff similarly argued that the resolution of the appeal would "require an analysis of

serious, constitutional legal questions, namely the appropriate balancing required between an

individual's constitutional rights to privacy and Gawker's First Amendment rights."  Ex. B at 15;

*see also id.* (arguing "that ***the right of privacy also is a fundamental constitutional right which

stands on equal footing with the First Amendment***" and that "the District Court failed to engage

in the required balancing of these equal, yet competing, constitutionally protected values")

(emphasis in original).  And, within literally a few minutes of filing his motion for remand

asserting that his claims are based solely on state law, plaintiff filed an Opposition to Gawker's

Motion to Dismiss *Bollea II*, containing an extended discussion that recycled his earlier

arguments and asserted, once again, that "the First Amendment and the right to privacy stand on

**equal footing**" because the right to privacy is "guaranteed by the Due Process Clause." *Bollea II*, Dkt. 21 at 5-8 (emphasis in original).[16]

Plaintiff's misstatements in this regard simply cannot be squared with full nature of the issues actually in dispute, which the Court properly considers in assessing whether it has federal question jurisdiction.[17]  Where, as here, a "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law," federal jurisdiction is warranted, *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983), including because "a federal court ought to be able to hear claims" that "turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers federal issues," *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  Here, plaintiff's argument that *Toffoloni* establishes a federal constitutional privacy right standing on equal footing with the First Amendment will likely play a material role in the outcome of this action, and as such presents a clear federal question.  *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. at 89 ("the district court has jurisdiction if 'the right of the

---

[16] For its part, Gawker has countered plaintiff's federal constitutional arguments at length in its papers. *See, e.g.*, *Bollea II*, Dkt. 10 at 9-11 (Gawker's Motion to Dismiss, which devotes an entire section to this issue, entitled "Plaintiff's Contentions that a *Constitutional* Right to Privacy Must Be *Balanced in Individual Cases* with First Amendment Protections is Erroneous").  That said, Gawker's assertion that plaintiff's constitutional claim is without merit is irrelevant to the jurisdictional inquiry.  "The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy."  *Caterpillar*, 482 U.S. at 391 n.4.  As a result, "[i]t is firmly established" that subject matter jurisdiction "'is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citations omitted).

[17] *See, e.g.*, *Vaden v. Discover Bank*, 556 U.S. 49, 62, 68 (2009) ("a federal court should determine its jurisdiction by 'looking through' [an arbitration] petition to the parties' underlying substantive controversy," particularly "when actual litigation has [already] defined the parties' controversy"); *see also id.* at 67-68 (rejecting request to "treat [petitioner's] statement of the issues . . . as the relevant controversy even when that statement does not convey the full flavor of the parties' entire dispute.  Artful dodges . . . should not divert us from recognizing the actual dimensions of that controversy."); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 641 n.9 (2006) (rejecting dissent's "position that we may not look beyond the label" in evaluating removal jurisdiction); *Community State Bank v. Strong*, 651 F.3d 1241, 1255, 1257-58 (11th Cir. 2011) (the Supreme Court "was very clear that jurisdiction should be predicated on the *substantive dispute between the parties*"; finding removal jurisdiction after "having probed" the basis of the controversy, including the "exhibits to the [removal] petition") (emphasis in original); *Peters v. Union Pacific R.R.*, 80 F.3d 257, 260 (8th Cir. 1996) ("plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists").

petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.'") (citation omitted); *Loma Linda*, 213 F.3d at 1003-04 ("If the Due Process Clause of the Fourteenth Amendment is given one construction, the claim will prevail; if it is given another, the claim will fail.  This is a paradigm case for arising-under jurisdiction.").  Because even plaintiff concedes that removal is proper where "resolution of his claim necessarily turns on a substantial question of federal law," Mot. at 16, his motion for remand must be denied.[18]

**B.      Claims Involving Ownership and Dissemination of Expression.**

Plaintiff's claims (a) expressly arise out of the creation and dissemination of the Gawker Story and Excerpts from the Video;[19] (b) seek the transfer to plaintiff of "all right, title and interest in and to'" the Video, *see* Compl. ¶¶ 47, 53, 91, 99, 106; *id.* at 24 ¶ 3; and (c) seek to enjoin acts "transferring, licensing, selling, [or] offering to sell or license" the Video, *id.* at 25 ¶ 5.  These are, at bottom, requests that the Court determine the original ownership of expression fixed in a tangible medium (including potentially as between Mr. and Mrs. Clem), effectuate a transfer of that ownership interest, and punish or prevent the dissemination of such expression.  Each of these is governed exclusively by the U.S. Copyright Act.  *See* 17 U.S.C. § 301.

---

[18] Plaintiff also repeatedly asserts that removal is not permitted where the federal question is based on a substantive defense.  *See, e.g.*, Mot. at 13 ("the federal question may not be inferred from a defense asserted or one expected to be made"); *id.* at 16 ("The fact that Gawker raises the First Amendment as a defense to Bollea's claims is irrelevant.  A federal question may not be inferred from a defense asserted or one expected to be made.") (citation omitted).  But Gawker has not argued that removal is proper because it is relying on the First Amendment as a defense, *see* Notice of Removal at 12-14, and, as such, this argument is a red herring.

[19] *See, e.g.*, Compl. ¶ 1 (complaining about Gawker Story and Excerpts being "posted to the Internet . . . for the public to view"); ¶ 28 (same); ¶ 29 (complaining about the "editing of" the Excerpts, "the dissemination, publishing [and] exploitation of the" Excerpts, and "the creation of" the Gawker Story); ¶ 35 (seeking injunctive relief to prevent defendants from "continu[ing] to post, publish, distribute, disseminate and exploit" the Gawker Story and the Excerpts); ¶ 58 (complaining about the "posting, publishing, distributing, disseminating and exploiting" of the Gawker Story and Excerpts); ¶ 68 (same); ¶ 80 (seeking injunctive relief to enjoin "the publication, distribution, dissemination and use" of the Gawker Story and Excerpts "including without limitation all still images thereof"); ¶ 86 (complaining about "publishing, distributing and disseminating" the Excerpts and "creating and publishing" the Gawker Story); ¶ 99 (seeking injunction enjoining "the distribution, dissemination and use" of the Excerpts); ¶ 101-02 (complaining about "publication" and "dissemination" of the Excerpts).

Pursuant to 28 U.S.C. § 1338, cited in Gawker's Notice of Removal but nowhere addressed by plaintiff, federal courts have original jurisdiction over claims "assert[ing] a claim for relief arising under any Act of Congress relating to . . . copyrights."  Section 1338 was recently amended to confirm that "[n]o State court shall have jurisdiction over any [such] claim."  *See* Leahy-Smith America Invests Act, Pub. L. 112-29, § 19(a), Sept. 16, 2011, 125 Stat. 331.  In that same law, Congress enacted 28 U.S.C. § 1454, expressly authorizing federal removal jurisdiction over patent and copyright actions when invoked *by any party*, thereby illustrating the importance Congress placed on having such claims adjudicated in federal court.  *Id.*[20]

Moreover, even without Sections 1338 and 1454, the complete preemption doctrine mandates removal of this decidedly federal issue, which, as plaintiff previously argued, originates in the Constitution's Copyright Clause.  *See Bollea I*, Dkt. 60 at 7 (citing U.S. Const. art. I, § 8, cl. 8).  As the Supreme Court explained in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 10-11 (2003), where a federal statute "provide[s] the exclusive cause of action" for plaintiff's claims, those provisions establish "the requisite pre-emptive force to provide removal jurisdiction, . . . [e]ven though the complaint makes no mention of federal law."  *See also Strong*, 651 F.3d at 1260 n.16 ("Complete preemption creates federal subject-matter jurisdiction," thereby "allowing for removal to federal court."); *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999) ("When Congress comprehensively occupies a field of law, 'any civil complaint raising this select group of claims is necessarily federal in character' and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331.") (citation omitted).

As such federal law is relevant here, Section 301 of the Copyright Act provides:

_____

[20] As such, Section 1454 abrogated the well-pleaded complaint rule in the copyright context and expressly reversed the holding of *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826 (2002), which otherwise limited removal to claims asserted in the complaint, rather than counterclaims.  *See* H.R. Rep. 112-98(I), 112th Cong., 1st Sess. 2011, 2011 WL 2150541, at *81 (new section "enact[s] the so-called Holmes Group fix," designed "to abrogate *Holmes Group*").

> [A]ll legal or equitable rights that are equivalent to any of the *exclusive* rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed *exclusively* by this title.  *[N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.*

17 U.S.C. § 301(a) (emphasis added).[21]  Section 102 defines copyright's subject matter as "original works of authorship fixed in any tangible medium of expression," including "audiovisual works."  17 U.S.C. § 102(a).  And, Section 106 includes "the exclusive rights to do and to authorize" various activities, including the right to "reproduce the copyrighted work," to "prepare derivative works," to "display the copyrighted work publicly," and to distribute the work, including through a "sale or other transfer of ownership."  17 U.S.C. §§ 106(1), (2), (3) & (5).  Because plaintiff's claims necessarily ask the Court to adjudicate whether the Video is susceptible of copyright protection and, if so, who owns it and who may disseminate and/or transfer rights in it, they are therefore issues exclusively governed by the Copyright Act.[22]  As a result, federal question removal jurisdiction is warranted for this reason as well.  *See Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 866 n.7 (11th Cir. 2008) (affirming removal jurisdiction for claim arising out of subject matter of Copyright Act based on "complete

---

[21] *See also See* H.R. Rep. No. 94–1476, 94th Cong., 2d Sess., at 130 (1976) ("The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a state that are equivalent to copyright and that extend to works coming within the scope of the federal copyright law."); *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns*, 182 F.3d 851, 857 (11th Cir. 1999) (noting that congressional intent is the "touchstone" of complete preemption analysis).

[22] To be sure, both Gawker and this Court have previously questioned whether the Video – a surveillance tape made through an entirely mechanical process – reflects the requisite level of creativity to merit copyright protection.  *See Bollea I*, Dkt. 64 (Opp. to Copyright PI Motion) at 11-12; Dkt. 66 (12/21/12 Order) at 1, 3.  But, "'[a]s long as a work fits within one of the general subject matter categories of sections 102 and 103, the [Act] prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify.'"  *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1311 (11th Cir. 2001) (quoting H.R. Rep. No. 94–1476, at 131 (1976)).  In addition, although Mr. Clem's purported assignment of rights in the Video to plaintiff raises an additional, predicate question of which spouse owned the rights, or whether they were jointly owned, that issue is also completely preempted.  *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.*, 510 F.3d 77, 86 (1st Cir. 2007) ("All of the federal circuit courts of appeal that have addressed the issue . . . agree that a determination of copyright ownership based on a disputed allegation of co-authorship presents a federal question that arises under, and must be determined according to, the Copyright Act.").

preemptive effect" of statute, including in connection with "claims of ownership of a copyright," which "encompasses the exclusive rights set out in § 106").[23]

## III.    MRS. CLEM'S CONSENT TO REMOVAL IS NOT REQUIRED.

First, under 28 U.S.C. § 1446(b)(2)(A), consent is only required of a defendant who was "properly served" at the time of removal.  *See, e.g.*, *White v. Bombardier Corp.*, 313 F. Supp. 2d 1295, 1300 (N.D. Fla. 2004) (citing *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), for proposition that relevant service must be procedurally proper); *Brittan v. Schuls*, 2007 WL 2175694, at *2 n.3 (M.D. Fla. July 25, 2007) (excusing consent of defendants not served "at the time the notice of removal was filed").  Plaintiff failed to attached a Certificate of Service to his Amended Complaint; it appears that the only service was in an email from plaintiff's counsel to only one of Mrs. Clem's three attorneys.  *See* Ex. C (email).  While Florida permits service by electronic mail, to ensure proper delivery Florida Rule of Judicial Administration 2.516(b)(1)(A) requires that "service must be directed to *all* designated e-mail addresses in" a proceeding (emphasis added).  By failing to serve Mrs. Clem's other two attorneys who had appeared on her behalf, as well as a "main" email address they designated for service, *see Bollea II*, Dkt. 3 at 5, the Amended Complaint was not properly served on Mrs. Clem in accordance with Florida law.  Her consent is therefore not required for removal.  *See, e.g.*, *White*, 313 F. Supp. 2d at 1300 ("The sufficiency of service . . . prior to removal is determined under the law of the state from whence the case was removed.").

Second, Mrs. Clem's consent is unnecessary because, as set forth in detail above, Mrs. Clem and the Gawker Defendants are not properly joined.  Plaintiff does not dispute that, insofar

---

[23] *See also Stuart Weitzman*, 542 F.3d at 864 (noting "four other circuits" recognize removal jurisdiction under Copyright Act "complete preemption") (citing *Santa-Rosa v. Combo Records*, 471 F.3d 224, 226-27 (1st Cir. 2006); *Ritchie v. Williams*, 395 F.3d 283, 285-87 (6th Cir. 2005); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 303-05 (2d Cir. 2004); *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 230-33 (4th Cir. 1993)).  Each of these cases pre-dates the enactment of 28 U.S.C. § 1454, which further confirms copyright removal jurisdiction.

as there is diversity jurisdiction over the action against the Gawker Defendants due to fraudulent misjoinder, Mrs. Clem's consent is unnecessary.  *See, e.g., Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) ("application of [consent] requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists"); *Torrence v. Pfizer, Inc.*, 2007 WL 788368, at *4 (M.D. Fla. Mar. 14, 2007) (same).  Rather, plaintiff argues only that Mrs. Clem's consent is required to exercise removal jurisdiction based on a federal question.  *See* Mot. at 18-20.  But there is no reason why claims against a defendant that are improperly joined would excuse consent in the diversity context, but not in federal question cases.  The statute giving rise to the so-called "unanimity requirement," 28 U.S.C. § 1446, applies on its face to situations "[w]hen a civil action is removed solely under section 1441(a)" – *i.e.*, which applies to *both* diversity and federal question cases – and states that "all defendants who have been *properly joined* and served must join in or consent to the removal of the action." *Id.* at § 1446(b)(2)(A) (emphasis added).  As a result, courts routinely hold that consent of a fraudulently joined or misjoined defendant is not required, regardless of whether diversity or federal question jurisdiction is asserted.[24]

---

[24] *See, e.g., United Computer Sys. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) ("the 'rule of unanimity' does not apply to 'nominal, unknown or fraudulently joined parties'"); *Farias v. Bexar Cnty.*, 925 F.2d 866, 871-72 (5th Cir. 1991) (exception to consent requirement "applies equally whether diversity or federal question jurisdiction is the mode of removal"); *Bertrand v. Fischer*, 2009 WL 5215988, at *2 (W.D. La. Dec. 29, 2009) ("'As many courts have held, the rationale for the doctrine of fraudulent joinder applies with equal force in the context of removal based on federal question jurisdiction.'. . .  Such a defendant is not required to join in or consent to removal.") (citation omitted); *Simpson v. Union Pac. R.R.*, 282 F. Supp. 2d 1151, 1156 (N.D. Cal. 1993) (consent of fraudulently joined defendant unnecessary for federal question removal; "[w]here questions of federal law arise in the complaint, a defendant possesses the right to avail himself of the expertise of the federal courts," which "should not be limited by the preferences of another defendant who wishes to remain in state court").

Plaintiff cites a couple of federal district court opinions, claiming they excuse consent in the federal question context only where there is evidence of collusion between the plaintiff and the improperly joined defendant.  *See* Mot. at 18-20 (citing *Hauck v. Borg Warner Corp.*, 2006 WL 2927559 (M.D. Fla. Oct. 12, 2006), and *Diaz v. Kaplan University*, 567 F. Supp. 2d 1394 (S.D. Fla. 2008)).  *Hauck*, from which both plaintiff and *Diaz* derived this supposed requirement, stated no such thing and provided collusion as *an example* of circumstances excusing consent.  *See* 2006 WL 29277559, at *6; *see also Diaz*, 567 F. Supp. 2d at 1402-03.  Moreover, such a limitation would contravene the plain text of 28 U.S.C. § 1446(b)(2)(A), which on its face requires consent only by "properly joined" defendants and applies to both diversity and federal question removal jurisdiction.

Finally, insofar as this case is removable because it implicates rights protected by the Copyright Act, *see* Part II.B. *supra*, Mrs. Clem's consent is unnecessary, altogether apart from the issues of joinder and service.  As noted above, with the recent enactment of 28 U.S.C. § 1454, Congress expressly authorized federal removal jurisdiction over claims raising copyright issues when invoked *by any party*, without requiring consent, illustrating the importance it places on having such claims adjudicated in federal court.  (Such a requirement would not make sense, since, among other things, Section 1454 authorizes removal by *plaintiffs* where a counterclaim implicating the patent or copyright laws has been asserted.)  More importantly for these purposes, the unanimity requirement set out in Section 1446(b)(2)(A) only applies where an action has been removed "solely under section 1441(a)" and has no application to actions removable under Section 1454.

## CONCLUSION

Based on the Notice of Removal and the foregoing, Heather Clem's claims should be severed and remanded, and plaintiff's motion should otherwise be denied.

Respectfully submitted,

THOMAS & LOCICERO PL

By:   /s/ Gregg D. Thomas
  Gregg D. Thomas
  Florida Bar No.: 223913
  Rachel E. Fugate
  Florida Bar No.: 0144029

Seth D. Berlin (admitted *pro hac vice*)
Paul J. Safier (admitted *pro hac vice*)
LEVINE SULLIVAN KOCH &
  SCHULZ, LLP
1899 L Street, NW, Suite 200
Washington, DC 20036
Telephone: (202) 508-1122
Facsimile: (202) 861-9888
sberlin@lskslaw.com
psafier@lskslaw.com

601 South Boulevard
Tampa, FL 33602
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
gthomas@tlolawfirm.com
rfugate@tlolawfirm.com

*Counsel for Defendant Gawker Media, LLC*

20

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of February 2013, a true and correct copy of

the foregoing is being electronically filed and will be furnished via CM/ECF to:

Kenneth G. Turkel, Esq.
kturkel@BajoCuva.com
Christina K. Ramirez, Esq.
cramirez@BajoCuva.com
Bajo Cuva Cohen & Turkel, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Tel: (813) 443-2199
Fax: (813) 443-2193

*Counsel for Plaintiff*

Barry A. Cohen, Esq.
bcohen@tampalawfirm.com
D. Keith Thomas
dkthomas@tampalawfirm.com
Barry A. Cohen Law Group
201 East Kennedy Boulevard, Suite 1000
Tampa, FL 33602
Tel: (813) 225-1655
Fax: (813) 225-1921

*Counsel for Defendant Heather Clem*

and served by mail and email on:

Charles J. Harder, Esq.
charder@HMAfirm.com
Harder Mirell & Abrams LLP
1801 Avenue of the Stars, Suite 1120
Los Angeles, CA 90067
Tel: (424) 203-1600
Fax: (424) 203-1601

*Co-Counsel for Plaintiff*

Michael W. Gaines
mgaines@tampalawfirm.com
Barry A. Cohen Law Group
201 East Kennedy Boulevard, Suite 1000
Tampa, FL 33602
Tel: (813) 225-1655
Fax: (813) 225-1921

*Co-Counsel for Defendant Heather Clem*

/s/ Gregg D. Thomas
Attorney