# EXHIBIT B

Defendant Gawker Media, LLC's Opposition
to Plaintiff's Motion for Remand

Bollea v. Gawker Media, LLC, et al., Case No. 12-15959-C

## CORPORATE DISCLOSURE STATEMENT AND
## CERTIFICATE OF INTERESTED PERSONS

In compliance with FRAP 26.1 and 11th Cir. R. 26.1-1, the undersigned certifies that the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporations that owns 10% or more of the party's stock and other identifiable legal entities related to any party.

1.    Bajo Cuva Cohen & Turkel, P.A. – law firm for Plaintiff - Appellant

2.    Bennert, Kate – Defendant - Appellee

3.    Berlin, Seth D. – attorney Defendants - Appellees

4.    Blogwire Hungary Szellemi Alkotast Hasznosito KFT aka Gawker Media – Defendant - Appellee

5.    Bollea, Terry, professionally known as Hulk Hogan - Plaintiff - Appellant

6.    Daulerio, A.J. – Defendant - Appellee

7.    Denton, Nick – Defendant - Appellee

8.    Fugate, Rachel E.– attorney for Defendants   - Appellees

9.    Gawker Entertainment, LLC – Defendant - Appellee

10.   Gawker Media Group, Inc. aka Gawker Media - Defendant - Appellee

Case 8:13-cv-00001-JDW-AEP   Document 24-2   Filed 02/08/13   Page 3 of 24 PageID 232

Bollea v. Gawker Media, LLC, et al. Case No. 12-15959-C

Case: 12-15959     Date Filed: 12/14/2012     Page: 2 of 23

11.  Gawker Media, LLC aka Gawker Media - Defendant - Appellee

12.  Gawker Sales, LLC - Defendant - Appellee

13.  Gawker Technology, LLC - Defendant - Appellee

14.  Harder, Charles J. - attorney for Plaintiff - Appellant

15.  Houston, David  R. – attorney for Plaintiff - Appellant

16.  Levine Sullivan Koch & Schulz, LLP – law firm for Defendants - Appellees

17.  Levinrad, Eric – attorney for Plaintiff - Appellant

18.  Ramirez, Christina R. – attorney for Plaintiff - Appellant

19.  Safier, Paul J. – attorney for Defendants - Appellees

20.  Stracher, Cameron A. – attorney for Defendants – Appellees

21.  The Law Office of David R. Houston – law firm for Plaintiff – Appellant

22.  Thomas & Locicero PL – law firm for Defendants - Appellees

23.  Thomas, Gregg D. – attorney for Defendants - Appellees

24.  Turkel, Kenneth G. – attorney for Plaintiff - Appellant

25.  Waller, Jonathan H. – attorney for Plaintiff - Appellant

26.  Whittemore, James D. - United States District Judge, Middle District of Florida

27.     Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP – law firm for

Plaintiff - Appellant

> /s/ Christina K. Ramirez
> Attorney

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**TERRY GENE BOLLEA, professionally**
**known as HULK HOGAN,**

                **Appellant,**

**v.**                                   **Case No. 12-15959-C**

**GAWKER MEDIA, LLC aka GAWKER**
**MEDIA; GAWKER MEDIA GROUP, INC.**
**aka GAWKER MEDIA; GAWKER**
**ENTERTAINMENT, LLC; GAWKER**
**TECHNOLOGY, LLC; GAWKER SALES,**
**LLC; NICK DENTON; A.J. DAULERIO;**
**KATE BENNERT, BLOGWIRE HUNGARY**
**SZELLEMI ALKOTAST HASZNOSITO**
**KFT aka GAWKER MEDIA, and DOES 1**
**Through 20, inclusive,**

                **Appellees.**
_____/

## MOTION FOR INJUNCTION PENDING APPEAL

Appellant Terry Gene Bollea, professionally known as "Hulk Hogan" ("Mr. Bollea" or

"Appellant"), by and through his undersigned counsel, hereby moves the Court for entry of an

Injunction Pending Appeal, requiring Appellees to immediately remove the excerpts from a

videotape of Mr. Bollea, taken without his knowledge or consent, engaged in sexual relations in

a private bedroom, that were posted on the www.Gawker.com website on or about October 4,

2012, as well as the written narrative describing in graphic detail the sex acts portrayed in the

video, and enjoining Appellees from posting, publishing or releasing any portions or content of

the video to the public until this Court rules on Appellant's appeal of the District Court's Order

denying his Motion for a Preliminary Injunction (Notice of Appeal filed on November 15, 2012).

Appellant seeks such relief from this Court pursuant to Rule 8(a)(2) of the Federal Rules of

Appellate Procedure ("FRAP").  Pursuant to FRAP 8(a)(1)(C), Appellant filed a Motion for

Injunction Pending Appeal with the District Court on November 19, 2012.  On December 4,

2012, the District Court denied Appellant's Motion.

## I.     <u>STATEMENT OF THE CASE</u>

This case involves an egregious set of facts and conduct by Appellees.  Mr. Bollea was

secretly taped having consensual sexual relations with a woman in a private bedroom.  He was

**unaware that he was being taped and never consented to the taping or the release of the tape.**

Appellees somehow gained possession of the tape and edited the most graphic parts of it into a

1 minute and 41 second "highlight reel" (the "Video Excerpts") depicting Mr. Bollea fully

naked; showing his sex partner performing oral sex on him; and showing him engaged in sexual

intercourse with her.  Appellees then posted the Video Excerpts on their website

www.Gawker.com (the "Gawker Webpage") for the entire world to view.  The footage was not

blocked, blurred or obscured in any way by Appellees, who created the edited "highlight reel"

and also added English subtitles to the video to ensure that viewers did not miss a word of the

private, sexual encounter.

Appellees also posted a graphic narrative, describing the sexual encounter in lurid detail.

The graphic narrative description of the sex tape, posted at the Gawker Webpage, states:

- "Hulk [Hogan] must get hard … the woman is eager to make that happen."

- "It is a slow, dutiful blowjob and Hulk is thrusting himself into her mouth to speed up the process… She spits loudly.  She resumes for a few seconds, but it appears the spit has worked because Hulk mutters something in a growly sex voice."

- "Then we watch Hulk … roll a condom on to his erect penis which, even if it has been ravaged by steroids and middle-age, still appears to be the size of a thermos you'd find in a child's lunchbox."

2

- "There is lots of squealing and moaning from her and she says stuff like, 'I want to make you cum' and, 'Your dick feels so good inside me' …. There is light spanking from Hulk done to show he supports her efforts and is close to orgasming."

- "She holds the condom full of Hulk jiz like it's a random dirty sock … Hulk is still coming down from his orgasm and is making quick, loud Tony Soprano wheezes."

Declaration of Nathaniel Wong dated December 14, 2012 ("Wong Decl."), a true and correct copy of which is attached as **Exhibit 1**, ¶ 2, Exh. A.  Within the first week after being published, the Gawker Webpage containing the Video Excerpts and narrative had already been viewed more than 2.9 million times.  Wong Decl., ¶ 4, Exh. B.  Importantly, the surreptitious filming of Appellant, and also Appellees' posting of the Video Excerpts on the Gawker Webpage, constitute a **felony** under Florida's video voyeurism statute, Fla. Stat. § 810.145.

Appellees' posting of the Video Excerpts and the graphic narrative (partially quoted above) is nothing more than "a morbid and sensational prying into private lives," which has injured, and continues to injure, Mr. Bollea in his personal and professional reputation, and in his "human dignity and peace of mind."  Michaels *v. Internet Entm't Group, Inc.*, 5 F.Supp.2d 823, 840 and 842 (C.D. Cal. 1998) (citing Restatement 2d Torts § 652D cmt. h; 2 McCarthy § 11.7[A]).  Appellees have admitted that "Because the internet has made it easier for all of us to be shameless voyeurs and deviants, we love to watch famous people have sex.  We watch this footage **because it's something we're not supposed to see**."  Wong Decl., Exh. A. (emphasis added).

The central questions raised by the underlying Motion for Preliminary Injunction (now on appeal with this Court) and this action generally, are as follows:

1. Does a person have the right to **secretly** videotape another person engaged in private, consensual sexual relations in a private bedroom?

3

2. Does a website have the right to post that video showing the person naked and engaged in sexual intercourse, against the person's objections and without his consent?

3. Does the person have the right to a Preliminary Injunction requiring the website to remove the video and graphic narrative description of the private sexual encounter?

Mr. Bollea submits that the answers to the first two questions is a resounding "No" and the answer to the third question is an equally resounding "Yes." If individuals are permitted to secretly videotape other individuals engaged in the most private, intimate human activities, in their private bedrooms, and if websites are permitted to post those videos (for substantial commercial gain) without the victim's permission, and against his strenuous objections, and if the courts will not intervene to enjoin the posting of the secret video, then the right to privacy ceases to exist. If Mr. Bollea is denied his request for the sex tape at issue to be removed from Gawker.com, then what is there to stop Peeping Toms everywhere from videotaping anyone and everyone in their most intimate moments – in their bedrooms, in bathroom stalls, in changing rooms, in doctor's offices, etc. – and allowing the footage to be posted on websites for all the world to watch – forever.

In an effort to stop this egregious violation of Mr. Bollea's privacy and the attendant irreparable damage caused as a result, Mr. Bollea requested of the District Court the issuance of a preliminary injunction requiring Appellees to immediately remove the offensive material from their website. On November 14, 2012, the District Court denied Appellant's Motion for a Preliminary Injunction (Dkt. 47). On November 15, 2012, Appellant filed a Notice of Appeal, seeking appellate review of the District Court's ruling (Dkt. 49). On November 19, 2012, Appellant further sought an injunction pending the appeal, which the District Court denied on December 4, 2012. (A true and correct copy of the District Court's Order denying Mr. Bollea's Motion for Injunction Pending Appeal is attached hereto as **Exhibit 2**).

4

In the meantime, the offensive video is receiving an ever-increasing number of views, each day that the video remains on the Gawker Webpage.  Since the filing of the Notice of Appeal on November 15, 2012, the offensive web page has received nearly 80,000 page views. Wong Decl. ¶ 5.  Permitting hundreds of thousands – or possibly millions – of people to view the offensive material while this Court considers Appellant's appeal threatens to severely undermine this Court's potential ruling that a preliminary injunction should have been granted by the District Court.

To stop this ongoing criminal violation of Mr. Bollea's privacy, and publicity rights, and the attendant irreparable damage which increases every day while the Court reviews Mr. Bollea's appeal, the Court should issue an injunction requiring the removal of the offensive material pending the appeal.

## II.    <u>STANDARD OF REVIEW</u>

"In considering a motion for injunction pending appeal, we examine four factors: (1) whether the movant is likely to prevail on the merits of his appeal; (2) whether, if we do not issue an injunction, the movant will suffer irreparable harm; (3) whether, if we issue an injunction, any other party with suffer irreparable harm; and (4) whether an injunction would serve the public interest."  Gonzalez ex re. Gonzalez v. Reno, 2000 WL 381901, at *1 (11th Cir. 2000) (citing In re Grand Jury Proceedings, 975 F.2d 1488, 1492 (11th Cir. 1992)).  While the first factor "is generally most important, the movant need not always show that he probably will succeed on the merits of his appeal."  Id.  Rather, "where the 'balance of the equities weighs heavily in favor of granting the [injunction],' the movant need only show a 'substantial case on the merits.'"  Id.; Sierra Club v. United States Army Corp of Engineers, 2007 WL 402830, at *1 (M.D. Fla. 2007) ("a showing on the latter three factors that is 'heavily tilted' in favor of a stay may compensate

for a showing on the first factor that is 'substantial' without necessarily showing that success on

the merits is 'probable.'" ) (citing Ruiz v. Estelle, 650 F.2d 555, 565-66 (5th Cir.1981)).  "In such

a case, it can be enough to show that '**a serious legal question is presented**' even if success is

not mathematically probable, but only if the other factors 'weigh heavily' in favor of granting the

stay."  Sierra Club, 2007 WL 402830 at *1.

        As discussed below, here the latter three factors, namely that the moving party will be

irreparably injured absent the relief; that the issuance of the stay or injunction will not

irreparably injure the other parties interested in the proceeding; and that the public interest will

not be adversely affected by the requested relief, weigh heavily in favor of an injunction pending

appeal.  With respect to a probability of success, this appeal – at a minimum – raises serious

legal questions regarding competing constitutional rights.  As such, an injunction pending appeal

should issue as requested.

## III.     ARGUMENT

### A.     Appellant Has a Strong Likelihood of Succeeding on the Merits on Appeal

#### 1.     Appellees are Continuing to Violate Appellant's Right of Privacy by Publicly Disclosing Intimately Private Facts

"The right of privacy is defined as the right of an individual to be let alone and to live a

life free from unwarranted publicity."  Harms v. Miami Daily News, Inc., 127 So. 2d 715, 717

(Fla. 3d DCA 1961).  To establish a claim for public disclosure of private facts under Florida

law, a plaintiff must show that there was (1) a publication, (2) of private facts, (3) that are

offensive, and (4) are not of public concern.[1]  Cape Publications, Inc. v. Hitchner, 549 So. 2d

---

[1] Florida has adopted the four causes of action comprising invasion of the right to privacy as
stated in the restatement.  Robert C. Sanchez, Business Law: Unauthorized Appropriation of an
Individual's Name or Likeness—Florida's Appellate Courts and 540.08, 72 FLA. BAR. J. 57, 57 (1998)
(observing that "Florida courts accepted the four general categories noted by Prosser").

1374, 1377 (Fla. 1989). As discussed below, Mr. Bollea has provided substantial evidence to support each of these elements.

### (a)   Public Disclosure of Private Facts

Appellees' posting of the Video Excerpts and the graphic narrative description of the private sexual encounter, at the Gawker Webpage is a public disclosure. See Michaels, 5 F.Supp.2d at 840 ("distribution of the [sex] Tape [of Pamela Anderson Lee and Bret Michaels] on the Internet would constitute public disclosure"). Any person with an Internet connection can freely access the Video Excerpts and the description posted at the Gawker Webpage. In fact, within the first week after being published, the Video Excerpts and Gawker Webpage had already been viewed more than 2.9 million times. Wong Decl. ¶ 4, Exh. B. Thus, the first element of the test is easily satisfied.

The Restatement (Second) of Torts, which Florida has adopted for privacy violations, states that "[s]exual relations, for example, are normally entirely private matters." Restatement (2d) of Torts, § 652D, cmt. (b) (1977). Numerous cases throughout the United States have similarly found information of a sexual nature to be private. See, e.g., Michaels, 5 F.Supp.2d at 840 ("content of the Tape – [plaintiffs] engaged in sexual relations – constitutes a set of private facts…" and "**[s]exual relations are among the most personal and intimate of acts**") (emphasis added); Lewis v. LeGrow, 258 Mich.App. 175, 188 (2003) (where plaintiff was secretly recorded having sex with defendant in defendant's bedroom "**there is no question that defendant's bedroom meets the required definition of a 'private place' as one from which the general public is excluded**") (emphasis added). The Restatement (Second) of Torts further provides that:

> when a photograph is taken *without the plaintiff's consent in a private place*, or one already made is stolen from his home, the plaintiff's appearance that is made

7

public **when the picture appears in a newspaper** is still a private matter, and **his privacy is invaded**.

Restatement (2d) of Torts, § 652D, cmt. (b) (emphasis added).  The Restatement, which Florida

follows, provides an example of a privacy violation that is remarkably similar to the present case:

> A, an undistinguished hardware merchant, is engaged in an **adulterous affair with the wife of one of his friends**.  B Magazine buys from private detectives a picture of the pair **in a hotel room** in a state of dishabille and publishes it.  **B has invaded A's privacy**.

Id. cmt. (b), illus. 6 (emphasis added).[2]

Likewise, here, Appellees have engaged in an invasion of Mr. Bollea's privacy by

publishing the Video Excerpts and the graphic narrative description at the Gawker Webpage.

The fact that Mr. Bollea was not in his own bedroom, but in the bedroom of his sexual partner, is

of no import.  Lewis, 258 Mich. App. at 188 ("a bedroom in a private home in which a couple

engages in intimate relations fulfills the definition of a 'private place'" and "reasonable people

engaged in sexual relations in a bedroom of a private home expect to be free from

'surveillance.'").  Mr. Bollea's right of privacy includes the sexual relations that are the subject

of the Video Excerpts and graphic narrative.

### (b)      Offensiveness

The Video Excerpts and narrative are manifestly offensive and would make any

reasonable person uncomfortable and embarrassed.  Defendants enabled everyone in the world

with Internet access to take a "front row seat" in the private bedroom to watch Mr. Bollea's

sexual encounter first-hand.  Moreover, the particular excerpts from the sex tape selected by

Appellees, and the particular events that were described in the narrative, are the most offensive

events from the sexual encounter:  full-frontal nudity of Mr. Bollea; his partner performing oral

---

[2] As discussed in the "Newsworthiness" section below, the fact that Appellant is a well-known individual, rather than an undistinguished hardware merchant, does not alter the analysis.

sex on him; the two engaged in sexual intercourse, etc., without any images being blocked,
blurred or obscured in any way.  Appellees' conduct therefore meets the "offensiveness" part of
the analysis. See Michaels, 5 F.Supp.2d at 840 (public disclosure of a videotape of private sexual
relations "would be objectionable to a reasonable person").

### (c)    The Content of the Sex Tape Is Not a Matter of Public Concern

The Eleventh Circuit has recognized that "even public figures, like actresses, may be
'entitled' to keep private 'some intimate details ... such as sexual relations ....'" Toffoloni, 572
F.3d 1201, 1211 (11th Cir. 2009) (citing Restatement (2d) of Torts § 652D, cmt. (h)).  While
there is no precedent within this Circuit addressing privacy violations in the context of a sex
tape, the federal courts in California have confronted a nearly identical set of circumstances in
the Michaels case.  That analysis is instructive.  In Michaels, plaintiff Bret Michaels, a rock
musician from the band Poison, and Baywatch actress Pamela Anderson Lee, filed a motion for a
preliminary injunction to prevent the defendants from publishing a private videotape of Michaels
and Lee having sex.  Michaels, 5 F.Supp.2d at 828-29.  Unlike in the current case, however,
Michaels and Lee **knew** that the sexual act was being recorded.  They did not, however, consent
to the **distribution** of the recording by the defendants.  Based on those facts, the court held that
Michaels and Lee had satisfied the test for a preliminary injunction with respect to their claims
for violation of the right to privacy and publicity.  Id. at 836-42.  Here, Mr. Bollea did not know
that he was being recorded, and did not consent to the distribution of the video to anyone for any
purpose.  On the contrary, he has filed suit against everyone involved and incurred substantial
attorneys' fees to stop the distribution of the video.

In Michaels, the defendants claimed that plaintiffs' status as celebrities somehow
diminished their expectation of privacy in their sex life.  The court **rejected** the defense, holding:

9

"[w]hile Michaels's voluntary assumption of fame as a rock star throws open his private life **to some extent,** even people who voluntarily enter the public sphere retain **a privacy interest in the most intimate details of their lives**." Id. at 840 (emphasis added). The court further held:

> Because they sought fame, Lee and Michaels must tolerate some public exposure of the fact of their involvement. The fact recorded on the Tape, however, is not that [plaintiffs] were romantically involved, but rather the visual and aural **details of their sexual relations,** facts which are ordinarily considered **private even for celebrities**.

Id. (emphasis added; citations omitted). The same analysis applies here. Appellees Gawker Media et al. did not simply report the arguably newsworthy story that Mr. Bollea was involved in a sex tape; they gave the world a "front row seat" in that private bedroom to watch Mr. Bollea fully naked and having sex.

The Michaels court acknowledged that privacy torts are subject to a "newsworthiness privilege." Id. at 839. "Newsworthiness is defined broadly to include not only matters of public policy, but any matter of public concern, including the accomplishments, everyday lives, and romantic involvements of famous people." Id. The court, however, **refused to apply the newsworthiness privilege to a sex tape**, holding:

> The privilege to report newsworthy information is not without limit. Where the publicity is so offensive as to constitute **a morbid and sensational prying into private lives for its own sake**, it serves no legitimate public interest and is not deserving of protection.

Id. at 840 (emphasis added; internal quotations and citations omitted); see also Restatement 2d Torts §652D cmt. (h). Moreover, the court found that the utter lack of social value in the videotape, combined with the depth of intrusion into the plaintiff's private affairs, weighed heavily against a finding of newsworthiness. Michaels, 5 F. Supp. 2d at 841-42.

Here, the Gawker Webpage and Video Excerpts serve no legitimate public interest – they serve only the most prurient and voyeuristic desires. Appellees' own description of the sex

10

tape highlights this fact: "… the internet has made it easier for all of us to be **shameless voyeurs**

**and deviants**, we love to watch famous people have sex .… When you see glimmers of sloppy

kissing or some shoulder moles or just an earnest, breathy, post-coital 'iluvvvvuuuu...' it

becomes mesmerizing."  Wong Decl. Exh. A (emphasis added).  Moreover, the Gawker

Webpage admits that the footage of Mr. Bollea is private and not intended for public view:  "We

watch this footage **because it's something we're not supposed to see**."  Id.  Thus, the Gawker

Webpage and the Video Excerpts is shameless voyeurism, and nothing more.  It is not

newsworthy, and any attempt by Appellees to claim it as such would show an inability to discern

shameless voyeurism from journalism.

> ## 2.     Appellees' Conduct is Also A Felony Under Florida's Video Voyeurism Statute

While the criminal aspect of Appellees' conduct is not being directly adjudicated in this

lawsuit, the fact that Appellees' conduct constitutes a **felony** under Florida law further supports

the need for injunctive relief.  Florida's video voyeurism statute provides, in pertinent part:

> (2) A person commits the offense of video voyeurism if that person:
>
> (a) For his or her own amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person, intentionally uses or installs an imaging device to secretly view, broadcast, or record a person, without that person's knowledge and consent, who is dressing, undressing, or privately exposing the body, at a place and time when that person has a reasonable expectation of privacy;…
>
> (3) A person commits the offense of **video voyeurism dissemination** if that person, **knowing or having reason to believe** that an image was created in a manner described in this section, intentionally **disseminates, distributes, or transfers** the image to another person for the purpose of amusement, entertainment, sexual arousal, gratification, or profit, or for the purpose of degrading or abusing another person.

Fla. Stat. §810.145 (emphasis added).

11

Appellees' conduct falls squarely within this criminal statute.  As described above, Appellees knew or had reason to believe that the sex tape was a secret recording of Mr. Bollea undressing, including fully exposing his private areas, and engaging in sexual relations, in the confines of a private bedroom.  Appellees knew that this activity was private and that they should not be watching, let alone disseminating it to the general public.  The Gawker Webpage admits: "it's something we're not supposed to see."  Wong Decl., Exh. A.  Moreover, Mr. Bollea's legal counsel sent two cease and desist communications to Appellees, and Appellees responded to them.  (Declaration of Plaintiff Terry Gene Bollea dated October 15, 2012 ("Bollea Decl."), a true and correct copy of which is attached hereto as **Exhibit 3**, at ¶¶ 8-9).  The letters informed Appellees that Mr. Bollea had been secretly taped, did not consent to any aspect of the video, including its posting at the Gawker.com website, and demanded the immediate removal of the Video Excerpts and Gawker Webpage.  Bollea Decl., Exhs. A and B.  Appellees refused to comply with the demands and confirmed their refusal in a response letter.  Bollea Decl., Exh. C. Accordingly, Appellees violated, and are continuing to violate, the Florida video voyeurism law, Fla. Stat. §810.145, which constitutes felony conduct.  This fact should provide further incentive for the Court to immediately enjoin Appellees' unlawful and outrageous conduct, while it considers Bollea's appeal of the District Court's denial of his Motion for a Preliminary Injunction.

### 3.    Appellees are Continuing to Violate Appellant's Right of Publicity by Misappropriating Appellant's Name and Image for Commercial Gain

To prevail on his right of publicity claim, Mr. Bollea must show that Appellees used his name or image for commercial, trade, or advertising purposes.  Fuentes v. Mega Media Holdings, Inc., 721 F. Supp. 2d 1255, 1260 (S.D. Fla. 2010) (citing Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1320 n. 1 (11th Cir. 2006)).  Mr. Bollea has established that Appellees used

12

his name, image and likeness without his consent.  Appellees have never suggested that his

consent was ever sought, let alone obtained.  The only remaining element for the claim is

whether Appellees used Mr. Bollea's name or image for a **commercial purpose**.

Profit and commercial benefit were the sole or predominant purpose for Appellees'

posting of the Video Excerpts and the graphic narrative description at the Gawker Webpage.

Appellees' business relies upon advertising revenues, which are based on the number of "hits" or

"page views" they are able to generate.  The more "views" the Gawker Webpage receives (and

the Gawker.com site generally), the more advertising revenue it generated.  The U.S. District

Court for the Southern District of New York recently **granted a temporary restraining order**

**against appellee Gawker Media** in a copyright infringement lawsuit.  The court discussed how

Gawker Media posts material to its website "in order to attract viewers to Gawker," and that

Gawker's use of material on its website is "commercial in nature" because:

> [T]he copyrighted material was placed alongside links to advertisements.  The
> more clicks those links receive, the more compensation [Gawker] can ask of
> advertisers.  Second, the more visitors Gawker receives because of the posting of
> the copyrighted material, the more attractive it becomes to potential advertisers on
> the site and, again, the more compensation [Gawker] can ask of those advertisers.

HarperCollins Publishers  v. Gawker Media, 721 F. Supp. 2d 303, 306 (S.D.N.Y. 2010).

Appellees post provocative, obscene and outrageous content at their websites for the

purpose of generating page views and, in turn, advertising revenue.  Declaration of Charles J.

Harder, dated November 19, 2012 ("Harder Decl."), a true and correct copy of which is attached

as **Exhibit 4**, ¶¶ 6-8, Exhs. E, F and G.  In a 2010 interview, Nick Denton, owner of Gawker

Media, admits that his websites' most shocking stories are "**the most cost effective marketing**

**you can possibly do**."  Harder Decl. ¶7.  These shocking stories, like the Gawker Webpage and

Video Excerpts, are a means to market, advertise, and grow the Gawker Media websites.

On October 15, 2012, Denton posted to Gawker.com an article entitled "**The Purpose of Gawker,**" which specifically discusses how the posting of Mr. Bollea's sex tape at Gawker.com drove substantial traffic to the website and the resulting advertising revenues.  Harder Decl., ¶ 5, Exh. D.  In that article, and in his statements to commenters of the article appearing immediately below, Denton states that the Hulk Hogan sex tape story and the Video Excerpts (along with another Gawker.com story that posted topless photographs of Kate Middleton, Duchess of Cambridge) "**pushed daily US audience over 1m –** *for the first time ever…. Those stories* **bring the site to new readers."**  Harder Decl., ¶5, Exh. D (emphasis added).  In that story, Denton discusses its ad revenue model regarding such provocative content, stating:  "Gawker's sales and in-house creative teams do not simply land one-off banner campaigns wrapped in jargon and fads like other digital properties. . . .We aspire to real interactive advertising. . . ."  Id.

Appellees misappropriated Mr. Bollea's name, image, likeness and identity for Appellees' financial gain.  This is precisely what the Florida right of publicity laws are intended to prevent.  In the Michaels case, the District Court granted injunctive relief based on plaintiffs' right of publicity claim, as well as their invasion of privacy claim.  Michaels, 5 F.Supp.2d at 836-39.  Both in Michaels, and the present case, the defendants misappropriated the plaintiff's name, image and likeness to drive viewers to their respective websites for financial gain.  Accordingly, Mr. Bollea is likely to succeed on this claim.

### 4.    At a Minimum, Serious Legal Questions are Presented by Appellant's Appeal

Even if the Court finds that Appellant cannot establish a likelihood of success on the merits, an injunction may still be appropriate.  As stated above, if Appellant can establish the remaining three factors for an injunction, "it can be enough to show that 'a serious legal question is presented' even if success is not mathematically probable."  Sierra Club, 2007 WL 402830, at

14

*1.  Here, resolution of Appellant's appeal will require an analysis of serious, constitutional legal questions, namely, the appropriate balancing required between an individual's constitutional rights to privacy and Gawker's First Amendment rights to publish the secretly recorded sex tape.

Specifically, Appellee's primary argument in its opposition to Appellant's Motion for Preliminary Injunction below, and the District Court's primary basis for its Order, relies on the premise that the First Amendment doctrine of prior restraint constitutes a near-absolute bar to a preliminary injunction based on a privacy or publicity claim.  Bollea v. Gawker Media, LLC, 2012 WL 5509624, at *2 (M.D. Fla. Nov. 14, 2012).  However, it has long been held in this Circuit and throughout the United States that **the right to privacy also is a fundamental constitutional right which stands on equal footing with the First Amendment**.  For example, in Toffoloni, this Court held as follows:

> Both the rights to freedom of speech and freedom of the press, as guaranteed by the First Amendment, and the right to privacy, as guaranteed by the Due Process Clause, are fundamental constitutional rights.  The Constitution directs no hierarchy between them.  Thus, courts are required to engage in a fact-sensitive balancing, with an eye toward **that which is reasonable and that which resonates with our community morals**, in order to protect the Constitution as a whole.

Toffoloni, 572 F3d at 1207-08 (emphasis added).  Contrary to this holding, however, Appellees' prior restraint argument below focused almost entirely on case law that did not involve privacy rights, and the District Court failed to engage in the required balancing of these equal, yet competing, constitutionally protected values, "with an eye toward that which is reasonable and that which resonates with our community morals…."  Id.  The District Court's failure in this regard raises serious legal questions as to whether the requested injunction was properly denied.  This Court will have to determine the appropriate balancing required to ensure that an individual's right to privacy continues to exist and is not nullified by assertions of First Amendment rights.

Given the significance of the legal questions at issue in this appeal, an injunction pending appeal would still be appropriate even if the Court determines that Appellant cannot establish a likelihood of success at this early stage of the litigation.

### B.      Mr. Bollea is Continuing to Suffer Irreparable Injury

Many courts have found public disclosure of private sexual content to cause irreparable damage. For example, in granting a preliminary injunction, the Michaels court held:

> By definition, an actionable disclosure of private facts must be highly offensive to a reasonable person.  The injury inflicted is therefore to the plaintiffs' "human dignity and peace of mind."  Although monetary damages are available for such injuries, they are difficult to quantify, and such injuries are to some extent irreparable.  Furthermore, the privacy of the acts depicted on the Tape cannot be restored by monetary damages after the Tape becomes public.  The nature of the internet aggravates the irreparable nature of the injury.

Michaels,  5 F. Supp. 2d at 842 (internal citation omitted).

The Southern District of New York found similar irreparable injury resulting from the publication of a nude image of Muhammad Ali:

> …[I]n the course of his public career plaintiff has established a commercially valuable proprietary interest in his likeness and reputation, analogous to the good will accumulated in the name of a successful business entity.  To the extent that defendants are unlawfully appropriating this valuable commodity for themselves, proof of damages or unjust enrichment may be extremely difficult. . . . Furthermore, defendants appear not only to be usurping plaintiff's valuable right of publicity for themselves but may well be inflicting damage upon this marketable reputation.  As described previously, the 'likeness' of Ali which has been published is a full frontal nude drawing, not merely a sketch or photograph of him as he appears in public.  Damages from such evident abuse of plaintiff's property right in his public reputation are plainly difficult to measure by monetary standards.

Ali v. Playgirl, Inc., 447 F.Supp. 723, 726 (S.D.N.Y. 1978).

Appellees acknowledge the strength of Mr. Bollea's professional reputation at the time they posted the Gawker Webpage and Video Excerpts:  "[u]p top, you'll see one minute from the 30 minutes of footage taken of 59-year-old Hulk Hogan, **professional wrestler, Real Life American Hero to many**, fucking a woman rumored to be the ex-wife of his best friend."

16

Wong Decl., Exh. A.  Appellant's status as a "professional wrestler, Real Life American Hero" and his ability to exploit his name, his brand, and his reputation is being irreparably damaged by Appellees' continued violation of his rights.

Moreover, the Gawker Webpage and Video Excerpts are continuing to have a profoundly detrimental effect on Mr. Bollea's emotional state and personal life.  As described in his declaration, "the public posting and dissemination of the Video has completely flipped my life upside down, has rattled my current marriage, has been devastating to me and my family, and has caused [] severe emotional distress.  Bollea Decl. ¶ 12.  This harm is exacerbated daily as many thousands of people continue to view the Gawker Webpage and Video Excerpts each day they remain online.  Wong Decl., Exh. B.  The Gawker Webpage containing the offensive video has received nearly 80,000 page views since November 15, 2012, the date that Appellant's Notice of Appeal was filed. Id.

Absent issuance of the requested injunction pending appeal, if Appellant prevails in his appeal, the Court of Appeals' ruling would be severely undermined, as a result of hundreds of thousands of people viewing the offensive material while the appeal is pending.  To avoid such unnecessary irreparable harm while this Court reviews the serious issues raised by this appeal, the Court should issue an injunction requiring the removal of the offensive material until this Court rules on Plaintiff's pending appeal.

C.    **Issuance of the Injunction Pending Appeal Will Not Substantially Injure Appellees**

Issuance of the injunction pending appeal will not substantially injure Appellees.  There is nothing time sensitive about the offensive material.  In fact, the video was recorded six years ago.  If the Court's ruling denying Appellant injunctive relief is affirmed on appeal, Appellees will, at worst, be temporarily prohibited from displaying that material.  Such a delay in being

permitted to display video footage made over six years ago cannot constitute substantial injury to Appellees.

Additionally, as discussed above, Appellees are already prohibited from displaying this material by Florida law.  The fact that Appellees' conduct constitutes a **felony** under Florida law, further supports the need for injunctive relief.   The requested injunction pending appeal will simply require Appellees to cease from engaging in conduct from which they are already prohibited under Florida law.  Thus, Appellees would suffer no substantial injury from the issuance of the injunction pending the appeal.  This factor weighs strongly in favor of the requested injunction.

        **D.**    <u>**The Public Interest Will Not Be Adversely Affected**</u>

For the reasons discussed above, there is no legitimate public interest in being able to view surreptitiously and improperly obtained footage of Appellant engaged in private consensual sexual activity.  See  Michaels,  5 F. Supp. 2d at 840 ("Where the publicity is so offensive as to constitute a morbid and sensational prying into private lives for its own sake, it serves no legitimate public interest and is not deserving of protection." (emphasis added)).  Permitting continued public access to this material is an egregious violation of Appellant's constitutionally protected privacy rights.  See Toffoloni, 572 F.3d at 1207-08.  Thus, the public interest will not be adversely affected by the issuance of the requested injunction pending appeal.

**IV.**    <u>**CONCLUSION**</u>

For all of the foregoing reasons, Appellant requests that this Court issue an injunction pending Appellant's appeal, enjoining Appellees from disclosing, disseminating or publishing the Gawker Webpage and the Video Excerpts, or any excerpts or portions thereof.

Respectfully submitted,

DATED: December 14, 2012

/s/ Christina K. Ramirez
Kenneth G. Turkel, Esq.
Florida Bar No. 867233
kturkel@bajocuva.com
Christina K. Ramirez
Florida Bar No. 0954497
cramirez@bajocuva.com
**BAJO CUVA COHEN & TURKEL, P.A.**
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Telephone:  (813) 443-2199
Facsimile:  (813) 443-2193

DATED: December 14, 2012

/s/ Charles J. Harder
Charles J. Harder, Esq.
California Bar No. 184593
charder@wrslawyers.com
Eric Levinrad, Esq.
California Bar No. 169025
elevinrad@wrslawyer.com
**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
11400 W. Olympic Boulevard, 9th Floor
Los Angeles, CA  90064-1582
Telephone:  (310) 478-4100
Facsimile:  (310) 479-1422

**Attorneys for Appellant Terry Gene Bollea**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been sent by email, pursuant to

the written consent of counsel of Appellees, this 14th day of December, 2012, to the following:

Seth D. Berlin – sberlin@lskslaw.com
Paul J. Safier – psafier@lskslaw.com

Attorneys for Appellees GAWKER MEDIA, LLC aka Gawker Media; GAWKER MEDIA
GROUP, INC.aka Gawker Media; GAWKER ENTERTAINMENT, LLC; GAWKER
TECHNOLOGY, LLC; GAWKER SALES, LLC; NICK DENTON; A.J. DAULERIO; KATE
BENNERT; BLOGWIRE HUNGARY SZELLEMI ALKOTAST HASZNOSITO KFT aka GAWKER
MEDIA

 /s/ Christina K. Ramirez_____
Attorney